ST. CROIX FALLS SCHOOL DISTRICT, Petitioner-Appellant,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Respondent,

NORTHWEST UNITED EDUCATORS, Respondent.

Court of Appeals

*No. 94–0841–FT. Submitted on briefs July 5, 1994.—Decided August 9, 1994.*

(Also reported in 522 N.W.2d 507.)

671

For the petitioner-appellant the cause was submitted on the briefs of *Joel L. Aberg* and *Stephen L. Weld* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general and *David C. Rice*, assistant attorney general.

For the respondent the cause was submitted on the brief of *Anthony L. Sheehan* and *Chris Galinat* of the *Wisconsin Education Association Council* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The St. Croix Falls School District appeals a trial court judgment affirming the Wisconsin Employment Relations Commission's (WERC) determination that the school district engaged in a prohibited practice under § 111.70(3)(a)1 and 4, STATS., when it altered its rules governing the use of sick leave by changing the minimum increment in which the sick leave must be used from one hour to one-half day.[1] The school district contends that it did not engage in a prohibited practice by making this change following the expiration of the old collective bargaining agreement and prior to the settlement of a successor agreement. The school district argues that its managements rights clause and a "zipper" clause in the previous agreement authorized the change and that WERC erred by concluding that the change altered the status quo that must be maintained during the hiatus between agreements. Because WERC's determination as to what is a prohibited practice is entitled to deference and because WERC properly concluded that

---

[1] This is an expedited appeal under RULE 809.17, STATS.

changing a rule governing the availability of sick leave from one-hour increments to four-hour increments is a disruption of the status quo that must be maintained during the hiatus between agreements, we affirm the judgment.

The relevant facts are undisputed. Northwest United Educators (NUE) is the certified exclusive bargaining representative for certain school district employes. The parties' initial collective bargaining agreement, effective from February 14, 1989, to June 30, 1991, was determined by an interest arbitration award issued in November 1991 after WERC determined that there was an impasse in negotiations. The parties did not agree to extend this initial collective bargaining agreement past June 30, 1991.

While the initial collective bargaining agreement's sick leave benefit clause was silent concerning the minimum increment of sick leave that would be granted, from the time of negotiations until January 1992 the school district had an unwritten practice of allowing employes to use sick leave in one-hour increments. Also, if an employe became sick during the day, the employe was charged sick leave only for the amount of time lost. The initial agreement also contained a management clause, which provides in part, "The Board . . . hereby retains and reserves unto itself . . . the right . . . [t]o establish reasonable work rules . . ." and a "zipper clause" that provides in part:

> This Agreement, reached as a result of collective bargaining, represents the full and complete agreement between the parties, and supersedes all previous agreements between the parties. Any supplemental amendments to this Agreement or past practices shall not be binding on either party unless executed in writing by the parties hereto.

In January 1992, the school district notified NUE in a memo that sick leave would thereafter be granted only in half-day (or four-hour) minimum increments. No collective bargaining agreement was in effect at this time.

NUE subsequently filed a complaint with WERC alleging that the school district's unilateral change in the sick leave policy constituted a prohibited practice, refusal to bargain, under § 111.70(3)(a)1 and 4, STATS. The hearing examiner concluded that prior to the January 1992 memo, the status quo on sick leave usage was that employes were permitted to use sick leave in one-hour increments and were charged sick leave only for lost time and that the school district impermissibly unilaterally changed that status quo during a contract hiatus period. The examiner noted that sick leave is primarily related to wages, hours and conditions of employment, which are mandatory subjects of collective bargaining. Thus, the examiner concluded, the school district had a statutory duty to maintain the status quo as to sick leave during the contract hiatus period. The examiner further noted that expired contract language and bargaining history are relevant to the determination of the status quo. Because the parties' prior practice consistently allowed employes to use sick leave in one-hour increments, the examiner concluded that was the status quo.

The school district appealed the examiner's decision to WERC, which affirmed and adopted the examiner's findings of fact, conclusions of law and memorandum. The school district appealed WERC's determination to the trial court, which affirmed. The trial court reasoned that because sick leave is a mandatory subject of collective bargaining, the school district was not authorized to unilaterally change its

sick leave policy during a contract hiatus period, notwithstanding the management and "zipper" clauses.

We review WERC's decision under the same standard of review as the trial court. *See Nelson v. LIRC*, 123 Wis. 2d 221, 224, 365 N.W.2d 629, 630 (Ct. App. 1985). Our review of this matter is limited to the question whether WERC's decision was correct; we do not address the correctness of the trial court's decision. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981).[2] As long as WERC's factual findings are supported by substantial and credible evidence, they are binding on this court. Section 227.57(6), STATS. Here, the parties do not dispute WERC's factual findings, only its legal conclusions.

The parties agree that due to WERC's experience, technical competence and specialized knowledge in administering the Municipal Employment Relations statutes, its interpretation and application of those statutes are entitled to great weight. *See Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992). Under this standard, we uphold WERC's interpretation and application of the statute as long as it is reasonable and consistent with the statute's language, regardless of whether other interpretations are reasonable. *See Sauk City v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991).

The school district concedes that sick leave is a mandatory subject of collective bargaining and that an employer thus may not unilaterally alter the status quo as to sick leave during a contract hiatus. *N.L.R.B.*

---

[2] We therefore do not address the school district's contentions of trial court error.

677

*v. Katz*, 369 U.S. 736, 743-46 (1962). The school district contends, however, that the "zipper" clause precluded WERC from considering the parties' past practice in its determination of the status quo. The school district also contends that the management clause authorized it to establish a "work rule" relating to the minimum allowable increments of sick leave.

The school district first contends that the "zipper" clause, which provides that past unwritten practices are not binding on the parties, precludes WERC from considering the practice of allowing employes to take sick leave in one-hour increments in making its determination of the status quo. Because the agreement did not state the minimum increments in which sick leave may be used, the school district argues, the employes were not entitled to a continuation of its past practice of administering the program by permitting sick leave to be taken in hourly increments. The school asserts that WERC's decision incorporates the parties' unwritten past practices regarding sick leave, in derogation of the "zipper" clause.

The "zipper" clause, however, does not prohibit WERC from examining the parties' practice as to sick leave as a tool to aid in its interpretation of the initial agreement's terms relating to sick leave. WERC determined that the administration of the sick leave program was ambiguous because it was not specified within the initial agreement's terms. WERC resolved the ambiguity by examining the parties' continuing practice, during and after the initial agreement expired, relating to sick leave. WERC has consistently examined the parties' practice under and administration of contract language because it is a reliable indicator of the status quo. *See, e.g., Mayville Sch. Dist.*, Dec. No. 25144-D at 24 (WERC, 5/92); *School*

*Dist. of Wisconsin Rapids*, Dec. No. 19084-C at 17 (WERC, 3/85). WERC determined that the contract language as it relates to sick leave should be interpreted to provide for the use of sick leave in one-hour increments, resolving the ambiguity created by the absence of specific rules governing sick leave administration in the contract.

We note that the National Labor Relations Board (NLRB) has ruled that "zipper" clauses do not authorize unilateral changes in a policy or benefit, even if the specific details of the administration is not included in the contract. *See Suffolk Child Dev. Ctr.*, 277 N.L.R.B. 158 (1985) (employer could not unilaterally reduce medical benefits even though specific details of medical benefits plan were not included in the contract; benefits had never been decreased during parties' bargaining history). That is because "the normal function of ["zipper"] clauses is to maintain the status quo, not to facilitate unilateral changes." *Murphy Oil*, 286 N.L.R.B. 104 (1987). WERC's conclusion that the "zipper" clause did not authorize the school district to change its administration of sick leave, even though there was no minimum required sick leave increment specified in the initial agreement, is consistent with the NLRB's interpretation of "zipper" clauses.

The school district also contends that the management clause was part of the status quo, and that the management clause authorized it to establish reasonable work rules. Thus, the school district argues, when it established the rule that sick leave could be taken in a minimum of half-day increments, it was maintaining the status quo "because the District only exercised rights which it bargained for and expressly reserved in . . . the collective bargaining agreement." The school

district asserts that status quo is a dynamic concept and thus it is authorized to make a unilateral change in the administration of its sick leave policy.

While status quo recognizes that changes can occur during a contract hiatus if such changes would otherwise have been permitted under the expired contract, it does not permit an employer to make unilateral changes in areas that are otherwise mandatory subjects for the collective bargaining table. *City of Wauwatosa*, Dec. No. 15917 at 14 (WERC, 11/77). The school district points to other WERC decisions in support of its contention that it was authorized to unilaterally change its sick leave policy. The situations in those decisions, however, are distinguishable.

In *Wisconsin Rapids*, the expired contract language contained unequivocal language stating that wages and vacation times were to be increased upon the employe's attainment of a certain experience level and as the schedule changes. The parties' practice under this contract language was that as employes reached a higher experience level at the end of a full year, their wages and vacation time increased. WERC concluded that automatic length-of-service based wage and vacation increases were the status quo. WERC thus held that the school district was required to continue this status quo, and that unilaterally freezing wage and vacation allotments during the contract hiatus was a prohibited practice.

Similarly, in *City of Brookfield*, Dec. No. 19822-C (WERC, 11/84), WERC concluded that, based on the contract language and the parties' practice under that language, the City was allowed to change the work schedules during a contract hiatus by reverting back to the work schedules as stated in the expired contract.

680

*Brookfield* involved a side agreement under which the parties had been working until the City changed the work schedules. The side agreement specifically provided, however, that the work schedule under the side agreement constituted summer hours for a "trial" period ending September 1, 1981. WERC concluded that the contract's work schedules were the status quo after September 1, 1981, and that the City was therefore authorized to change the work schedules back to those dictated by the expired contract during the contract hiatus.

Here the status quo as to sick leave, based on WERC's interpretation of the contract language relating to sick leave, was that employes could take sick leave in one-hour increments. Unlike the contracts in *Wisconsin Rapids* and *Brookfield*, the initial agreement did not expressly provide for changes in sick leave policy based upon the school district's discretion or based upon events that the parties had specifically agreed would result in changes to the policy. Rather, the contract, as construed by WERC, provided for the administration of sick leave in one-hour increments. These prior WERC decisions support WERC's conclusion that the school district engaged in a prohibited practice by unilaterally changing its sick leave policy during the contract hiatus, because sick leave administration was covered under the contract's terms and was a mandatory subject of collective bargaining.

We conclude that WERC's determination of the status quo and its conclusions regarding the legal significance of the "zipper" and management clauses are reasonable and consistent with the law. We therefore affirm the judgment.

*By the Court.*—Judgment affirmed.