MILWAUKEE POLICE ASSOCIATION, LOCAL 21, IUPA, AFL-CIO, Matthew Grauberger, Milwaukee Police Supervisors' Organization, Plaintiffs-Respondents,†

v.

Nannette H. HEGERTY,[1] Chief of Police for the City of Milwaukee, and City of Milwaukee, Defendants-Appellants.

Court of Appeals

*No. 03–3081. Submitted on briefs May 4, 2004.—Decided June 2, 2004.*

2004 WI App 148

(Also reported in 685 N.W.2d 864.)

† Petition to review filed.

[1] When this action was filed, Arthur Jones was the Chief of Police for the City of Milwaukee. His term has expired and

Nannette H. Hegerty is now the Chief of Police. Accordingly, pursuant to WIS. STAT. RULE 803.10(4), Chief Hegerty is automatically substituted as a party in this action.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Grant F. Langley*, city attorney and *Donald L. Schriefer*, assistant city attorney, Milwaukee.

On behalf of the plaintiffs-respondents Milwaukee Police Association and Matthew Grauberger, the cause was submitted on the joint brief of *Jonathan Cermele* of *Eggert & Cermele, S.C.*, Milwaukee and on behalf of the plaintiff-respondent Milwaukee Police Supervisors' Organization, by *John Fuchs* of *Fuchs, Destefanis & Boyle, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. Nannette H. Hegerty, Chief of Police for the City of Milwaukee, and the City of Milwaukee appeal the trial court's determination that the City must remit to police officer Matthew Grauberger and other members of the Milwaukee Police Association and the Milwaukee Police Supervisors' Organization overtime compensation within twelve days after that overtime compensation is earned, rather than within the thirty-one day window required by Wis. Stat. § 109.03(1).

¶ 2. This appeal presents a straight-forward issue of statutory application, which is subject to our *de novo* review. *Truttschel v. Martin*, 208 Wis. 2d 361, 364–365, 560 N.W.2d 315, 317 (Ct. App. 1997). If the language of

a statute is clear on its face, we need not look any further than the statutory text to determine the statute's meaning. *State v. Peters*, 2003 WI 88, ¶ 14, 263 Wis. 2d 475, 481–482, 665 N.W.2d 171, 174.

■

¶ 3. The legislature has established a general rule that sets the time within which compensation to employees must be paid: "Every employer shall as often as monthly pay to every employee engaged in the employer's business . . . all wages earned by the employee to a day not more than 31 days prior to the date of payment."[3] WIS. STAT. § 109.03(1). This "required frequency of wage payments" does not apply, however, to "[e]mployees covered under a valid collective bargaining agreement establishing a different frequency for wage payments." § 109.03(1)(a). No one disputes that all payments of overtime compensation, as material to this appeal, were made within thirty-one days after that overtime compensation was earned. The police officers and supervisors contend, however, that the "collective bargaining agreement" between the City and each union established "a different frequency for wage payments." We disagree.

¶ 4. As material here, the collective-bargaining agreements between the unions and the City have the following similar clauses:

*The Milwaukee Police Association:* "In the event that the provisions of this Agreement or application of this Agreement conflicts with the legislative authority which devolves upon the Common Council of the City of Milwaukee as more fully set forth in the provisions of the Milwaukee City Charter, Section 62.50, Wisconsin

---

[3] The omitted language, designated by the ellipsis, concerns "employees engaged in logging operations and farm labor."

Statutes, 1977, and amendments thereto, pertaining to the powers, duties and responsibilities of the Chief of Police and the Board of Fire and Police Commissioners or the Municipal Budget Law, Chapter 65, Wisconsin Statutes, 1971, or other applicable laws or statutes, this Agreement shall be subject to such provisions."

*The Milwaukee Police Supervisors' Organization:* "In the event that the provisions of this Agreement or its application conflicts with the legislative authority delegated to the City Common Council, the Chief of Police and Fire and Police Commission (which authority being set forth more fully by: The Milwaukee City Charter; the statutory duties, responsibilities and obligations of the Chief of Police and the Fire and Police Commission as they are provided for in Section 62.50 of the Wisconsin Statutes; the Municipal Budget Law, which is set forth in Chapter 65 of the Wisconsin Statutes; or other applicable laws or statutes); then this Agreement shall be subordinate to such authority."

Both collective-bargaining agreements have the standard integration clause: "This Agreement constitutes the full and complete agreement of the parties and there are no others, oral or written, except as herein contained." *See Matthew v. American Family Mut. Ins. Co.*, 54 Wis. 2d 336, 341–342, 195 N.W.2d 611, 613–614 (1972) (giving effect to integration clause).

¶ 5. No one disputes that neither collective-bargaining agreement, *in haec verba,* "establish[es] a different frequency for wage payments" than the thirty-one day window mandated by Wis. Stat. § 109.03(1). The police officers and supervisors contend, however, that the quoted language from the collective-bargaining agreements incorporates Milwaukee, Wis., City Charter Ordinance § 5–06, that § 5–06 "establish[es] a different frequency for wage payments," and thus, by virtue of

§ 109.03(1)(a), the thirty-one day window in § 109.03(1) does not apply. We disagree.

¶ 6. Nothing in the quoted language from the collective-bargaining agreements relied on by the police officers and supervisors purports to incorporate anything; all it provides is that if the collective-bargaining agreement "conflicts" with anything in the Milwaukee City Charter or related specified legislation, the collective-bargaining agreement is "subordinate" or "subject" to that legislation. But "subordinate to" and "subject to" are not words of incorporation—saying that X is subject or subordinate to Y does not incorporate Y into X, it means that Y trumps X, and governs if there is a conflict. Moreover, there is no conflict, in words or application, between the collective-bargaining agreements and MILWAUKEE, WIS., CITY CHARTER ORDINANCE § 5–06 because nothing in either the collective-bargaining agreements or in § 5–06 says how soon overtime compensation must be paid after it is earned.

██

¶ 7. MILWAUKEE, WIS., CITY CHARTER ORDINANCE § 5–06 provides, as material here: "Officers and employes [*sic*] of the city of Milwaukee shall be paid bi-weekly."[4] No one disputes that the police officers and supervisors received their paychecks "bi-weekly." They argue, however, that this "bi-weekly" paycheck should include all overtime earned within the twelve days preceding issuance of that "bi-weekly" check, and cobble together various scraps of alleged practice and subjective interpretations that they contend support their interpretation. But, as noted, the collective-bargaining

---

[4] MILWAUKEE, WIS., CITY CHARTER ORDINANCE § 350–108 similarly provides: "The salaries and wages of all city officers and employes [*sic*] shall be paid biweekly."

agreements are integrated documents—external evidence of claimed ancillary agreements is immaterial. *See Matthew*, 54 Wis. 2d at 341–342, 195 N.W.2d at 613–614 (giving effect to integration clause). Additionally, "paid bi-weekly" as it appears in § 5–06 is not ambiguous; it means that employees must receive their paychecks (whatever period those paychecks cover) every two weeks. Significantly, the section used to read: "Officers and employes [*sic*] of the city of Milwaukee shall be paid bi-weekly on the second Friday following the completion of the work period." This language was changed to the current version in 1972, and if still extant might provide support for the position of the police officers and supervisors. But that language has long-since receded into the archives.

¶ 8. It is settled that in any conflict between a statute and an ordinance, the statute governs. *Welter v. City of Milwaukee*, 214 Wis. 2d 485, 492, 571 N.W.2d 459, 463 (Ct. App. 1997). But there is no conflict between MILWAUKEE, WIS., CITY CHARTER ORDINANCE § 5–06 and WIS. STAT. § 109.03(1). The former mandates the issuance of "bi-weekly" paychecks; the latter requires that all payroll checks, whatever their period of issuance, include compensation for "all wages earned by the employee to a day not more than 31 days prior to the date of payment."

¶ 9. The police officers and supervisors have pointed to nothing in the collective-bargaining agreements that would trigger an exemption under WIS. STAT. § 109.03(1)(a) from the thirty-one-day-window default provision in § 109.03(1). Simply put, there is nothing in their collective-bargaining agreements that, in the words of § 109.03(1)(a), can be read as "establishing a different frequency for wage payments" than the thirty-one day period mandated by § 109.03(1). Accordingly,

their complaint seeking judicial override of the governing law must be dismissed.

*By the Court.*—Order reversed.

¶ 10. WEDEMEYER, P.J. (*dissenting*). I respectfully dissent from the majority opinion because I would affirm the trial court's decision. The analysis is quite simple. The WIS. STAT. § 109.03(1) thirty-one day payment rule does not apply when employees are "covered under a valid collective bargaining agreement establishing a different frequency for wage payments . . . ." WIS. STAT. § 109.03(1)(a).

¶ 11. It is undisputed here that the employees are covered under valid collective bargaining agreements. The question then is whether the collective bargaining agreements establish a different frequency for wage payments. The City contends that collective bargaining agreements do not establish a time different than the thirty-one day rule in chapter 109 and, the unions conversely argue that the collective bargaining units impose a shorter payment frequency.

¶ 12. Resolution of this conflict is not complicated. Both collective bargaining units involved here contain a provision which states: "In the event that the provisions of this Agreement or application . . . conflict[] with the . . . provisions of the Milwaukee City Charter . . . this Agreement shall be subject to such provisions." The MILWAUKEE, WIS., CITY CHARTER ORDINANCE § 5–06 provides: "Officers and employes of the city of Milwaukee shall be paid bi-weekly."

¶ 13. These two provisions working together result in the logical conclusion that § 5–06 controls the frequency of wage payments for the employees, and requires that *all* wages must be paid twelve days after the end of the period in which such wages are earned. Let me explain.

307

¶ 14. The unions collectively bargained for agreements which included a provision stating that the Milwaukee City Charter Ordinances applied if any conflict in the collective bargaining agreement, or in the *application* of the collective bargaining agreement, occurred. This case presents a conflict in the application of the collective bargaining agreements. The conflict is that the City contends the collective bargaining agreements do not have to comply with § 5–06, requiring *all* wages to be paid bi-weekly. The City, in essence, then is applying the collective bargaining agreements to permit overtime wages to be paid within thirty-one days or *monthly.* When there is a conflict in application of the collective bargaining agreements, the Milwaukee City Charter Ordinance trumps the collective bargaining agreement.

¶ 15. That brings us directly to the language of § 5–06—wages *shall* be paid bi-weekly. The ordinance does not distinguish between base pay, straight pay, or overtime pay.[1] Rather, it says that the employees *shall be paid bi-weekly.* Payment can only be interpreted to include *all* wages the employee earned in the period to which that bi-weekly check applies. Based on this analysis, I conclude that the thirty-one day provision of chapter 109 was collectively bargained away by the City. The error in the majority's reasoning lies in its failure to recognize or acknowledge that a party who otherwise is enabled to enforce a statutory right may relinquish that power by contract, which is what happened in this

[1] It is clear that the ordinance includes *all* payments and is not limited to straight time for two reasons. First, as noted, the ordinance refers in general to an employee's *pay.* It does not exclude overtime. Second, wages are defined by statute to include all types of payment, including overtime. *See* Wis. Stat. § 109.01(3).

case. *See Faust v. Ladysmith-Hawkins Sch. Sys.*, 88 Wis. 2d 525, 532, 277 N.W.2d 303 (1979). In fact, chapter 109 acknowledges an employee's right under a collective bargaining agreement to establish a different frequency for payments other than the thirty-one days set forth in the statute. WIS. STAT. § 109.03(1)(a). If the result of collective bargaining has produced an effect that lacks wisdom, the proper forum for corrective action is not this court but, instead, the next collective bargaining agreement or the legislature.

¶ 16. The position in this dissent is further supported by customary practice. With the exception of occasional mistake, error, or computer glitches, the City's past practice has been to pay overtime to the union employees in the pay period immediately following the period in which it was earned. It has been the customary practice to make overtime payments on the twelfth day in accord with the bi-weekly language of § 5–06, rather than the thirty-one day rule of chapter 109. The United States Supreme Court and the Wisconsin Supreme Court have both recognized the principle of incorporating past practice into a negotiated collective bargaining agreement. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–81 (1960); *Milwaukee Prof'l Firefighters, Local 215 v. City of Milwaukee*, 78 Wis. 2d 1, 22–24, 253 N.W.2d 481 (1977).

¶ 17. Here, the record clearly reflects that the past practice was to pay overtime bi-weekly in the pay period immediately following the period in which it was earned. The City acknowledged this fact during the summary judgment hearing. Inevitably, there are exceptions to the customary practice, such as when employees make mistakes on the time slips, when the data technicians enter the data erroneously, or when the

computer malfunctions. Nevertheless, the exceptions cannot operate to supplant the general rule that over-time has customarily been paid consistent with the bi-weekly requirements of § 5–06.

¶ 18. In sum, then, I conclude that the trial court's analysis was correct. I would affirm.