MILWAUKEE POLICE ASSOCIATION, LOCAL 21, IUPA,
AFL-CIO, Matthew Grauberger, Milwaukee
Police Supervisors' Organization,
Plaintiffs-Respondents-Petitioners,

v.

Nannette H. HEGERTY, Chief of Police for the City
of Milwaukee, and City of Milwaukee,
Defendants-Appellants.

Supreme Court

*No. 03–3081. Oral argument February 3, 2005.—Decided
March 22, 2005.*

2005 WI 28

(Also reported in 693 N.W.2d 738.)

For the plaintiffs-respondents-petitioners there were briefs by *Jonathan Cermele, Rachel L. Pings* and *Eggert & Cermele, S.C.,* Milwaukee, and oral argument by *Jonathan Cermele.*

For the defendants-appellants there was a brief by *Grant F. Langley* and *Donald L. Schriefer,* Milwaukee, and oral argument by *Donald L. Schriefer.*

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Milwaukee Police Association, Local 21, IUPA, AFL-CIO, Matthew Grauberger, and Milwaukee Police Supervisors' Organization, seek review of a published decision of the court of appeals reversing an order of the circuit court, which had ruled in favor of the petitioners.[1] In this case we must determine whether the parties' collective bargaining agreements establish a different frequency for payment of overtime compensation than the 31–day frequency set forth in Wis. Stat. § 109.03(1) (2001–02).[2] The petitioners assert that the court of appeals erred in concluding that the 31–day frequency for payment controlled. They maintain that their collective bargaining agreements establish a shorter frequency of payment, 12 days after the end of the pay period in which the overtime was earned.

¶ 2. We agree with the petitioners that the City of Milwaukee is required to pay overtime compensation within 12 days after the end of the pay period in which the overtime was earned. Here, the collective bargaining agreements in question defer to the Milwaukee City Charter Ordinances. We interpret Milwaukee City Charter Ordinance § 5–06 as requiring the bi-weekly payment of overtime compensation. Moreover, custom and past practice of the parties indicate that the City of Milwaukee has historically paid overtime on the payday

---

[1] *Milwaukee Police Assoc. v. Hegerty,* 2004 WI App 148, 275 Wis. 2d 300, 685 N.W.2d 864 (reversing an order of the circuit court for Milwaukee County, Daniel A. Noonan, Judge).

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

immediately following the period in which it was earned. Accordingly, we reverse the decision of the court of appeals.

I

¶ 3.  The Milwaukee Police Association (MPA) and Milwaukee Police Supervisors' Organization (MPSO) are labor organizations recognized by the City of Milwaukee (City) for the Milwaukee Police Department. The former is the exclusive bargaining representative for certain non-supervisory police officers, while the latter is the exclusive bargaining representative for certain officers from rank of Sergeant through Deputy-Inspector of Police.

¶ 4.  This case arose after delays in processing a number of overtime cards in periods 16–21 of 2002 because of problems with the Police Department's mainframe computer.[3] During that time, the City allegedly failed to pay members of the MPA and MPSO a total of $824,040.29 in overtime compensation. It was this amount of earned overtime, together with what the police organizations believed was its untimely eventual payment, which formed the basis for this cause of action.

---

[3] As the City explains in its brief, contractual overtime is tracked by use of cards that employees complete whenever they work outside their regular hours. The data on these cards is then entered into the Police Department's mainframe computer by data entry personnel and transferred to the City Comptroller's Office where the information is processed for payment. The problems with the mainframe computer resulted in delays both in entering and transferring the overtime card data.

¶ 5. Since 1972, City employees have been paid bi-weekly on every other Thursday. The payday falls 12 days after the end of a two-week pay period in which the compensation is earned.

¶ 6. On October 2, 2002, the MPA and MPSO commenced suit seeking a declaratory judgment that the defendants-appellants' actions in failing to make timely payments of earned overtime violated Wis. Stat. Ch. 109; temporary and permanent injunctions enjoining the defendants-appellants from failing to make overtime payments according to the parties' collectively bargained and long-standing practices; penalties of up to 50 percent of delayed overtime payments; attorney fees; and liquidated damages.[4] The police organizations also filed a motion for a temporary restraining order.

¶ 7. A hearing on the police organizations' request for a temporary restraining order was held on October 16, 2002. The circuit court granted the motion, preserving the status quo. The police organizations then filed a summary judgment motion, and the City responded with a summary judgment motion of its own. After oral argument, the circuit court found there were no genuine issues of material fact and determined that the police organizations were entitled to judgment as a matter of law.

¶ 8. In its decision, the circuit court concluded that (1) Milwaukee City Charter Ordinance (MCCO) § 5–06 required all wages, including overtime, to be paid 12 days after the end of the two-week pay period in which the wages were earned; (2) the parties collectively bargained an exception to the 31–day frequency

---

[4] The police organizations indicate in the statement of facts in their brief that they subsequently "waived their claims for damages and penalties under ch. 109."

of payment contained in Wis. Stat. Ch. 109 by subordinating their agreements to the MCCO in cases of conflict between the two; and (3) the City historically paid overtime in the pay period immediately following the period in which it was earned.

¶ 9. On June 2, 2004, a divided court of appeals reversed the order of the circuit court. In doing so, the majority acknowledged that the parties subordinated their collective bargaining agreements to the MCCO in cases of conflict between the two. However, it held that no such conflict existed in the present case because neither agreement specified how soon overtime compensation must be paid. *Milwaukee Police Assoc. v. Hegerty,* 2004 WI App 148, ¶ 6, 275 Wis. 2d 300, 685 N.W.2d 864. Accordingly, the majority observed that, "[s]imply put, there is nothing in their collective bargaining agreements that, in the words of § 109.03(1)(a), can be read as 'establishing a different frequency for wage payments' than the thirty-one day period mandated by § 109.03(1)." *Id.,* ¶ 9.

¶ 10. Judge Wedemeyer dissented from the majority opinion. Although he agreed with the majority that the analysis was simple, he concluded that this case presented a conflict in the application of the collective bargaining agreements. *Id.,* ¶ 14 (Wedemeyer, J., dissenting). The conflict stemmed from the City's contention that the agreements did not have to comply with MCCO § 5–06. *Id.* Therefore, the City was applying the agreements to permit overtime compensation to be paid within 31 days or monthly rather than the bi-weekly payment as set forth in the MCCO. *Id.* Because of this conflict in application, the MCCO requirement of paying its employees bi-weekly trumped the terms of the agreements. *Id.* Judge Wedemeyer further noted that "[w]ith the exception of occasional mistake, error, or

156

computer glitches, the City's past practice has been to pay overtime to the union employees in the pay period immediately following the period in which it was earned." *Id.,* ¶ 16 (Wedemeyer, J., dissenting).

## II

■■■
¶ 11.  This case presents a single issue for our review. We must determine whether the parties' collective bargaining agreements establish a different frequency for payment of overtime compensation than the one set forth by Wis. Stat. § 109.03(1). Resolution of this inquiry involves interpretation of statute, collective bargaining agreement, and ordinance. Each of these present a question of law subject to independent appellate review. *See Roth v. City of Glendale,* 2000 WI 100, ¶ 15, 237 Wis. 2d 173, 614 N.W.2d 467; *State v. Ozaukee County Bd. of Adjustment,* 152 Wis. 2d 552, 559, 449 N.W.2d 47 (Ct. App. 1989).

## III

¶ 12.  We begin our discussion with the relevant statute. Wisconsin Stat. § 109.03(1) addresses the general time period that employees must be paid wages. It provides that, "[e]very employer shall as often as monthly pay to every employee engaged in the employer's business . . . all wages earned by the employee to a day not more than 31 days prior to the date of payment." Wis. Stat. § 109.03(1).

¶ 13.  That statute further provides, however, that this "default" period of 31 days does not apply when employees are "covered under a valid collective bargaining agreement establishing a different frequency for wage payments . . . ." Wis. Stat. § 109.03(1)(a). In this

case, it is undisputed that the police organizations are covered under valid collective bargaining agreements. The question therefore becomes whether their agreements with the City establish a different frequency of payment than the one set forth in Wis. Stat. § 109.03(1).

¶ 14. The pertinent provision of the agreement between the MPA and the City is Article 4. It states that the MCCO applies if any of its provisions or its application conflicts with the collective bargaining agreement. Article 4 provides as follows:

> *In the event that the provisions of this Agreement or its application conflicts with* the legislative authority which devolves upon the Common Council of the City of Milwaukee as more fully set forth in the provisions of *the Milwaukee City Charter,* Section 62.50, Wisconsin Statutes, 1977, and amendments thereto, pertaining to the powers, duties and responsibilities of the Chief of Police and the Board of Fire and Police Commissioners or the Municipal Budget Law, Chapter 65, Wisconsin Statutes, 1971, or other applicable laws or statutes, *this Agreement shall be subject to such provisions.*

(Emphasis added.)

¶ 15. Article 4 of the collective bargaining agreement between the MPSO and the City similarly provides that the MCCO controls in the event that it conflicts, either expressly or in application, with the collective bargaining agreement. It states:

> *In the event that the provisions of this Agreement or its application conflicts with* the legislative authority delegated to the City Common Council, the Chief of Police and Fire and Police Commission (which authority being set forth more fully by: The *Milwaukee City Charter;* the statutory duties, responsibilities and obligations of the Chief of Police and the Fire and Police Commission

158

as they are provided for in Section 62.50 of the Wisconsin Statutes; the Municipal Budget Law, which is set forth in Chapter 65 of the Wisconsin Statutes; or other applicable laws or statutes); then *this Agreement shall be subordinate to such authority.*

(Emphasis added.)

¶ 16.   Citing these provisions, the police organizations contend that the parties subordinated their collective bargaining agreements to existing legislation in the event that the two conflicted. They assert that MCCO § 5–06 requires that all compensation, including overtime, be paid bi-weekly (i.e., 12 days after the pay period in which the compensation was earned). Because the City has applied the collective bargaining agreements in a manner conflicting with MCCO § 5–06, the police organizations submit that MCCO § 5–06 controls the frequency of overtime payments.

¶ 17.   The City, meanwhile, asserts that MCCO § 5–06 does not require it to pay overtime on the 12th day following the end of the pay period in which the compensation was earned. To begin, the City notes that MCCO § 5–06 is silent as to the frequency of overtime payments. Moreover, it questions the import of Article 4, arguing that (1) there is no conflict triggering its resort to MCCO § 5–06, and (2) the provisions merely guarantee managerial rights conferred upon the City and thus have no relevance to this case. Accordingly, the City maintains that the 31–day statutory rule governs its overtime payments.[5]

---

[5] In essence, the City argues that it need not pay on the first payday following the two-week period in which the compensation was earned. Rather, if circumstances warrant, it wants the flexibility to be able to pay on the second payday. It contends that a second payday approach complies with the statutory

¶ 18.   In addressing the arguments of the parties, we must consider three separate matters. Initially, we must determine whether the MCCO provides for a frequency of overtime payments. Then, we must decide whether either the provisions of the collective bargaining agreements or the application of the agreements conflict with the MCCO regarding that frequency. Finally, if such a conflict exists, we must resolve whether the language of the collective bargaining agreements is sufficient to provide complete deference to the MCCO.

A.

¶ 19.   We begin by examining the frequency of overtime payments required under the MCCO. MCCO § 5–06 provides as follows:   "Officers and employes of the city of Milwaukee shall be paid bi-weekly." Admittedly, the charter ordinance does not answer the precise question before us. That is, it makes no distinction as to the types of pay to which it refers (i.e., base pay, overtime, holiday pay, etc.). However, by not differentiating or limiting specific pay components, it is reasonable to infer that the drafters intended to require the bi-weekly payment of all compensation, including overtime. This inference supports our conclusion that the City is required to pay overtime compensation within 12 days after the end of the pay period in which the overtime was earned. Our conclusion is also supported

---

31–day rule. The police organizations contend, however, that a second payday approach violates the 31–day rule because payment earned for the first week of the two-week pay period will be outside of 31 days from the date earned. Given our determination that the City must pay within 12 days of the end of the pay period in which the overtime is earned, we need not address this argument.

160

by the title of MCCO § 5–06, Wis. Stat. Ch. 109, and the legislative history of MCCO § 5–06. We consider each in turn.

1.

¶ 20.   MCCO § 5–06 is entitled "Bi-weekly Payment of Salary." The title of an ordinance is persuasive evidence of the interpretation to be given to it. *See Mireles v. LIRC,* 2000 WI 96, ¶ 60, n. 13, 237 Wis. 2d 69, 613 N.W.2d 875; *Ozaukee County,* 152 Wis. 2d at 559. Although the term "salary" is not defined in MCCO § 5–06, the term is referenced in the preceding section, MCCO § 5–05. We look to MCCO § 5–05 because a court cannot read individual sections of a charter ordinance in a vacuum, but rather must examine them as a whole. *See State v. Tollefson,* 85 Wis. 2d 162, 167, 270 N.W.2d 201 (1978).

¶ 21.   Under MCCO § 5–05, the term "salary" has an expansive connotation. That charter ordinance provides that, with the exception of incentive compensation to improve productivity, officers and employees receiving a "salary" from the City may not receive compensation from the City other than the "salary" that is fixed and provided for the specific office. Because officers get paid more than their base wage, "salary" necessarily implies all remuneration. Given this broad meaning of the term "salary" in the preceding section, it is reasonable to conclude that the salary referred to in the title of MCCO § 5–06 includes overtime compensation and that overtime is part of the "bi-weekly" payment.

161

█

¶ 22. A broad reading of MCCO § 5–06 is also consistent with Wis. Stat. Ch. 109. Wisconsin Stat. § 109.03(1) sets forth the minimum or "floor" for the frequency of payment. Although the City can give its employees something better, it cannot give them less. It cannot transgress this default period of 31 days.

¶ 23. Significantly, Wis. Stat. Ch. 109 not only sets forth that at a minimum employees must be paid within 31 days of when compensation was earned, but also answers the question of what compensation must be paid within that 31–day period. Under Wis. Stat. § 109.01(1r), the term "wages" does not refer only to base salary or wage. Rather, it refers to all remuneration, including overtime. Wisconsin Stat. § 109.01(1r) provides:

> "Wage" or "wages" means remuneration payable to an employee for personal services, *including* salaries, commissions, holiday and vacation pay, *overtime pay*, severance pay or dismissal pay, supplemental unemployment benefit plan payments when required under a binding collective bargaining agreement, bonuses and any other similar advantages agreed upon between the employer and the employee or provided by the employer to the employees as an established policy.

(Emphasis added.)

¶ 24. By enacting MCCO § 5–06, the City has modified the minimum standard for frequency of payment set forth in Wis. Stat. § 109.03(1). However, it has not modified what must be paid within the newly established bi-weekly frequency. As set forth in Wis. Stat. § 109.01(1r), overtime is included. Accordingly, it

162

is reasonable to conclude that MCCO § 5–06 also encompasses overtime compensation.

3.

█

¶ 25. Finally, we find the legislative history of MCCO § 5–06 instructive in establishing the frequency of overtime payments. Before it was changed to its present form in 1972, the language of MCCO § 5–06 required payment of all wages on the very next payday following the pay period in which they were earned. It stated that, "Officers and employes of the City of Milwaukee shall be paid bi-weekly on the second Friday following completion of the work period." The subsequent modification removed "Friday" as the day on which the checks were to be issued. Apparently this was done because the City was having problems issuing checks on Fridays when the Friday fell on a holiday.[6]

¶ 26. Although the City maintains that 1972 change removed the requirement of paying overtime on the very next payday following the pay period in which it was earned, we are not persuaded. At oral argument, the City Attorney acknowledged that the frequency of payment is a term and condition of employment. As such, the City would typically have had to bargain with the police organizations, which were in existence in 1972. Because there is no evidence that such bargaining took place, we will not interpret the ordinance to have made such a significant change. Instead, we conclude that the "bi-weekly" language of MCCO § 5–06 still

---

[6] This was explained in a letter from the City Comptroller to the Common Council dated July 19, 1972. That letter stated in relevant part, "We would like *not* to have the ordinance specifically state the date of payment because of holidays and other circumstances."

requires payment of all wages, including overtime, on the very next payday following the pay period in which they were earned.

## B.

■

¶ 27.   Having determined that MCCO § 5–06 provides for a frequency of overtime payments, we consider next whether either provision of the collective bargaining agreements or the application of the agreements conflict with it as to the frequency of payment. The City submits that there is no conflict, either expressed or in application. It notes the agreements distinguish between base pay and overtime pay, establishing the frequency of payment for the former but not the latter.[7] Because the agreements do not specify the frequency of payment for overtime, the City argues that there is no conflict triggering resort to outside law.

¶ 28.   It is true that the collective bargaining agreements in question do not contain express provisions relating to the timing of overtime payments. However, this fact is irrelevant in light of Article 4. The Article 4 provisions demonstrate that the parties bargained for a different frequency of payment of overtime than the "default" period set forth in Wis. Stat. § 109.03(1). The reason for this is that Article 4 defers to MCCO § 5–06 in the event that a conflict exists. Under Article 4, the conflict need not be in the expressed terms of the agreements but may arise in the application of the agreements.

---

[7] In the agreement between the City and the MPA, the relevant sections for base salary and overtime are Articles 10 and 15 respectively. Meanwhile, in the agreement between the City and MPSO, the relevant sections for base salary and overtime are Articles 9 and 12 respectively.

¶ 29. This case presents a conflict in the application of the parties' collective bargaining agreements. Here, the conflict arose from the City's failure to pay overtime compensation in a bi-weekly fashion, and its insistence that it has no obligation to do so. Thus, it is the City's position that it applied the collective bargaining agreements in a manner to allow overtime compensation to be paid within 31 days or monthly. Such an application conflicts with the requirements of MCCO § 5–06, as explained above.

C.

¶ 30. Accepting this conflict in application, we turn next to whether the language of the collective bargaining agreements is sufficient to provide complete deference to the MCCO. Again, the City maintains that it is not. It asserts that the Article 4 provisions merely guarantee that managerial legislative rights conferred upon the City by various laws cannot be bargained away. According to the City, the Article 4 provisions do not have any relevance here.

¶ 31. On this matter, the argument of the City appears overstated. The only way to find Article 4 irrelevant is to ignore much of its text, which subjects the collective bargaining agreements to more than the City's managerial authority. As relevant here, the provisions set forth above subordinate the agreements to the ordinances contained in the Charter and enacted under the Common Council's legislative authority.[8] If this were not the case, there would have been no need

---

[8] In addition to subjecting the agreements to the charter ordinances, the Article 4 provisions also subject the collective bargaining agreements to other outside bodies of law, such as Wis. Stat. § 62.50, Wis. Stat. Ch. 65, and "other applicable laws or statutes."

to use the language as "set forth more fully by" or "as more fully set forth in" the provisions of the Charter.

¶ 32. Accordingly, we conclude that when the City agreed to make its collective bargaining agreements "subject to" and "subordinate to" the Charter in the event of a conflict, it necessarily meant that the agreements deferred to all portions of the Charter, including MCCO § 5–06. Thus, by agreeing to the Article 4 provisions, the City relinquished what would otherwise have been a statutory right to pay overtime compensation within 31 days of the date earned. If the City believes this result to be unwise or impractical, its remedy lies at the bargaining table or in changing the relevant legislation.

IV

¶ 33. Finally, we note that our decision today is consistent with the custom and past practice of the parties. Bodies like the Wisconsin Employment Relations Commission have often looked to past practice because it has proven to be a reliable indicator of the parties' intent as to the status quo. *St. Croix Falls School Dist. v. WERC*, 186 Wis. 2d 671, 678, 522 N.W.2d 507 (Ct. App. 1994) (citing *Mayville School Dist.*, Dec. No. 25144–D at 24 (WERC, 5/92); *School Dist. of Wisconsin Rapids*, Dec. No. 19084–C at 17 (WERC, 3/85)).

¶ 34. In this case, the custom and past practice of the parties indicate that the City of Milwaukee has historically paid overtime in the pay period immediately following the period in which it was earned.[9] Indeed,

---

[9] The police organizations buttress this conclusion with a number of extrinsic documents, including the Milwaukee Police Department's own Standard Operating Procedure, letters from

the City acknowledges that overtime compensation has regularly been paid within 12 days after that compensation was earned except in those instances where it has been paid with one pay period of delay because of any conceivable type of mistake, delay, hang-up, glitch, or the like that might occur from the moment an officer starts to complete his card through computer processing of the data on the card.[10]

¶ 35. Inevitably there are circumstances that prevent an employer from complying with the timely payment of wages such as overtime compensation. For example, computers may malfunction, payroll personnel may get sick, or data entry personnel may make mistakes. In such cases, circuit courts may exercise their discretion and choose not to award civil penalties or expenses to the employees.[11] However, these exceptions cannot supplant the general rule that overtime

---

then City Labor Negotiator, James Geissner, and a document entitled the Penny-Difference Report.

[10] According to the City, the reason for this is simple. Because it is trying to run an orderly compensation system, it has to stay on top of things, especially when it is receiving 5,000 to 10,000 overtime cards per pay period. Although the City explains its actions in terms of "payroll prudence," we conclude that it is also a matter of contractual obligation for the reasons listed above.

[11] Indeed, this court recently observed that, "[a] circuit court ultimately has discretion to award few or no civil penalties or expenses. If the wage dispute was the result of an honest misunderstanding, a mistake, or a reasonable dispute, a circuit court might very well not award civil penalties or expenses to an employee who rushes into court and bypasses the alternative dispute resolution provided through the DWD." *Hubbard v. Messer,* 2003 WI 145, ¶ 40, 267 Wis. 2d 92, 673 N.W.2d 676. This discretion to impose civil penalties stems from the language "may order" in Wis. Stat. § 109.11(2).

compensation has customarily been paid within 12 days after the pay period in which that compensation was earned.

## V

¶ 36.  In sum, we agree with the petitioners that the City of Milwaukee is required to pay overtime compensation within 12 days after the end of the pay period in which the overtime was earned. Here, the collective bargaining agreements in question defer to the Milwaukee City Charter Ordinances. We interpret Milwaukee City Charter Ordinance § 5–06 as requiring the bi-weekly payment of overtime compensation. Moreover, custom and past practice of the parties indicate that the City of Milwaukee has historically paid overtime on the payday immediately following the period in which it was earned. Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.