IN the MATTER OF CAROL J. R.:

CAROL J. R., Appellant,†

v.

COUNTY OF MILWAUKEE, Respondent.

Court of Appeals

*No. 94–0688. Submitted on briefs November 1, 1994.—Decided September 19, 1995.*

(Also reported in 540 N.W.2d 233.)

†Petition to review dismissed.

For the appellant the cause was submitted on the briefs of *Mark Lukoff*, assistant state public defender.

For the respondent the cause was submitted on the briefs of *Robert G. Ott*, corporation counsel, with *Robert A. McKnight*, principal assistant corporation counsel.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J.   Carol J. R. appeals from an order denying her motion for post-commitment relief from a probate court commissioner's order for involuntary medication. The central issue on appeal is whether a probate court commissioner has the authority to order post-involuntary commitment psychotropic medication.[1]

---

[1] Section 757.72, STATS., sets forth the powers of a probate court commissioner:

We conclude that the Wisconsin Supreme Court's conclusion in *State ex rel. Jones v. Gerhardstein*, 141 Wis. 2d 710, 745-46, 416 N.W.2d 883, 898 (1987), that recognized a court commissioner to hear and determine the medication issue under a previous version of § 51.61, STATS., survived unscathed from a repeal and

**Office of probate court commissioner. (1)** In counties having a population of 500,000 or more, there is created in the classified civil service the office of probate court commissioner. In counties having a population of at least 100,000 but not more than 500,000, the county board may create the office of probate court commissioner which may be in the classified civil service.

**(2)** Judges assigned probate jurisdiction may assign to the probate court commissioners any matters over which the judges have jurisdiction, and the probate court commissioners may determine such matters and may sign any order or certificate required in such determination.

**(3)** Probate court commissioners shall receive such salary and be furnished with quarters, necessary office furnishings and supplies as determined by the county board.

**(4)** In counties having a population of 500,000 or more the chief judge of the judicial administrative district shall appoint and may remove probate court commissioners under ss. 63.01 to 63.17. In counties having a population of at least 100,000 but not more than 500,000 the chief judge shall appoint and may remove any probate court commissioner if cause is proven. Probate court commissioners shall be attorneys licensed to practice in this state.

**(5)** The register in probate of a county shall have the duties and powers of a probate court commissioner and shall act in that capacity when designated to do so by a judge assigned probate jurisdiction.

**(6)** Before entering upon the performance of their duties, probate court commissioners shall take and file the official oath.

**(7)** Probate court commissioners shall by virtue of their respective positions, and to the extent required for the performance of their duties, each have the powers of a court commissioner.

**(8)** The probate court commissioners may administer oaths, take depositions and testimony, and certify and report the depositions and testimony, take and certify acknowledgments, allow accounts and fix the amount and approve the sufficiency of bonds.

re-creation of § 51.61(1)(g)3, STATS.[2] Accordingly, we affirm the order denying post-commitment relief.

The facts are undisputed. On October 26, 1993, the trial court committed Carol J. R. to the custody of the Milwaukee County § 51.42 Board for six months and designated the Milwaukee County Mental Health Complex as the facility to receive her into the mental health system for involuntary treatment. Upon a motion of the Board and after a hearing, the probate court commissioner authorized the Board to administer psychotropic drugs to Carol J. R. using appropriate medical standards. On March 8, 1994, Carol J. R. moved the trial court to vacate the court commissioner's order authorizing the administration of psychotropic drugs, contending that a probate court commissioner lacks authority to conduct § 51.61(1)(g), STATS., hearings as provided by §§ 757.69 and 757.72, STATS.[3] On March 18, the trial court denied Carol J. R.'s post-commitment motion.

---

[2] Section 51.61(1)(g)3, STATS., provides in part:

3. Following a final commitment order, [a patient shall] have the right to exercise informed consent with regard to all medication and treatment unless the committing court . . . makes a determination, following a hearing, that the individual is not competent to refuse medication or treatment . . . .

[3] Section 757.69(1)(h), STATS., provides in part:

(1) . . . [A] court commissioner . . . may: . . . (h) Hear petitions for commitment and conduct probable cause hearings under ss. 51.20, 51.45 and 55.06(11) . . . .

Section 757.72(7), STATS., provides in part:

Probate court commissioners shall by virtue of their respective positions, and to the extent required for the performance of their duties, each have the powers of a court commissioner.

Resolution of this issue requires the application of statutes to undisputed facts. Accordingly, it presents an issue of law that we determine without deference to the conclusions of the trial court. *Old Republic Surety Co. v. Erlien*, 190 Wis. 2d 401, 411, 527 N.W.2d 389, 392 (Ct. App. 1994).

Carol J. R. argues that the legislature terminated the power of a probate court commissioner to conduct post-final commitment hearings on involuntary administration of psychotropic drugs when it repealed and recreated § 51.61(1)(g), STATS., six months after the supreme court decided *Gerhardstein*. *See* 1987 Wis. Act 366, § 18.

In *Gerhardstein*, the supreme court determined that an unconstitutional disparity of rights existed between precommitment detainees and involuntary committees with respect to the right to exercise informed consent for the administration of psychotropic drugs. *Gerhardstein*, 141 Wis. 2d at 733-34, 416 N.W.2d at 892-93. The precommitment detainees had the right to exercise informed consent; the committees did not. *Id.* at 733-35, 416 N.W.2d at 892-93. Applying an equal protection analysis, the court thoroughly discussed the circumstances under which involuntary detainees and committees may be forcibly administered psychotropic drugs. *Id.* at 733-45, 416 N.W.2d at 892-97. Only after detailing this remedial scheme did the court discuss the authority to hear and determine motions relating to involuntary administration of medication. The court stated that the hearing could be concomitant with the original commitment hearing under the standard of § 51.61(1)(g), STATS., or at any time thereafter during the pendency of the involuntary commitment. *Id.* at 746, 416 N.W.2d at 898. Further,

the court stated that "*such hearings could be held by court commissioners.*" *Id.* (emphasis added).

The supreme court decided *Gerhardstein* on December 21, 1987. The Wisconsin Legislature, however, repealed and re-created § 51.61(1)(g), STATS., effective May 3, 1988. *See* 1987 Wis. Act 366, § 18.

Section 51.61(1)(g), STATS. (1985-86), pre-repeal, provided in part:

> Prior to the final commitment hearing and court commitment orders, [each patient shall] have the right to refuse all medication and treatment except as ordered by the court under this paragraph, or in a situation where such medication or treatment is necessary to prevent serious physical harm to the patient or to others. Medications and treatment during such period may be refused on religious grounds only as provided in par. (h). At or after the hearing to determine probable cause for commitment but prior to the final commitment order, the court may issue an order permitting medication to be administered to the individual regardless of his or her consent if it finds that such medication will have therapeutic value and will not unreasonably impair the ability of the individual to prepare for or participate in subsequent legal proceedings, and that there is probable cause to believe that the individual is not competent to refuse medication. Before issuing such an order, the court shall hold a hearing on the matter which meets the requirements of s. 51.20(5), except for the right to a jury trial. An individual is not competent to refuse medication if because of mental illness, developmental disability, alcoholism or drug dependence, the individual is incapable of expressing an understanding of the advantages and disadvantages of accepting treatment, and the alternatives to accepting the

887

particular treatment offered, after the advantages, disadvantages and alternatives have been explained to the individual. Following a final commitment order, the subject individual does not have the right to refuse medication and treatment except as provided by this section.

After repeal and re-creation, the statute provided in part:

**51.61(1)**(g) [Patients shall] have the following rights, under the following procedures, to refuse medication and treatment:

. . .

3. Following a final·commitment order, have the right to exercise informed consent with regard to all medication and treatment unless the committing court or the court in the county in which the individual is located makes a determination, following a hearing, that the person is not competent to refuse medication or unless a situation exists in which the medication or treatment is necessary to prevent serious physical harm to the patient or others. The hearings under this subdivision shall meet the requirements of s. 51.20(5), except for the right to a jury trial.

While both versions mandate the hearing requirements of § 51.20(5), STATS., each version is silent as to which body shall conduct the hearings. There is a presumption under the canons of statutory construction, however, that the legislature knew about the previous statute and about the impact that *Gerhardstein* had upon it. *See Kindy v. Hayes,* 44 Wis. 2d 301, 314, 171 N.W.2d 324, 330 (1969) (it is presumed that the legislature acted with full knowledge of the existing law, both the statutory and court decisions interpreting it).

Indeed, in *Reiter v. Dyken,* 95 Wis. 2d 461, 290 N.W.2d 510 (1980), our supreme court stated that where a legislative act has been construed by this court, the legislature is presumed to know that on the absence of the legislature explicitly changing the law, the court's construction will remain unchanged. *Id.* at 471, 290 N.W.2d at 515.

These canons of construction apply to this case. *Gerhardstein* painstakingly set a new procedural course to protect the rights of those unfortunate citizens who are alleged to be so mentally ill that they may require involuntary medication. In clear and unambiguous terms the court declared that court commissioners may preside over hearings on all commitment medication petitions. Within five months of the supreme court decision, the legislature breathed statutory life into the principles of *Gerhardstein* by expressly spelling out a patient's "bill of rights." While neither the express language of the revised statute nor the legislative drafting records[4] make any reference to *Gerhardstein*'s recognition of the court commissioner's authority, we are convinced that the supreme court's conclusion in *Gerhardstein* survived the legislature's actions. *See Reiter,* 95 Wis. 2d at 471, 290 N.W.2d at 515; *see also State v. Gomaz,* 141 Wis. 2d 302, 320 n.11, 414 N.W.2d 626, 634 n.11 (1987) (case law interpreting statutes survives legislative changes that did not expressly alter the case law). To conclude otherwise would "resurrect the rigidity rejected" in *Gerhardstein. State v. Evans,* 187 Wis. 2d 66, 90, 522 N.W.2d 554, 563 (Ct. App. 1994). Accordingly, we conclude that court commissioners, including the probate court commis-

---

[4] *See generally* Wisconsin Legislative Reference Bureau, Drafting Records, 1987 Wis. Act 366.

sioner at issue in the present case, have the authority to conduct a hearing under § 51.61(1)(g), STATS.

*By the Court.*—Order affirmed.