# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1525 |
| COMPLETE TITLE: | Milwaukee District Council 48, Plaintiff-Respondent, v. Milwaukee County, Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 379 Wis. 2d 322, 905 N.W.2d 140
PDC No: 2017 WI App 82 - Published

| | |
|---|---|
| OPINION FILED: | March 19, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 24, 2018 |

| SOURCE OF APPEAL: | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Stephanie Rothstein |

| JUSTICES: | |
|---|---|
| CONCURRED: | |
| DISSENTED: | ZIEGLER, J., dissents, joined by ROGGENSACK, C.J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there was a brief filed by *Alan M. Levy*, *Samantha J. Wood*, and *Lindner & Marsack*, *S.C.*, Milwaukee. There was an oral argument by *Alan M. Levy*.

For the plaintiff-respondent, there was a brief filed (in the court of appeals) by *Mark A. Sweet* and *Sweet and Associates*, *LLC*, Milwaukee. There was an oral argument by *Mark A. Sweet*.

No. 2016AP1525
(L.C. No. 2011CV16826)

STATE OF WISCONSIN     :     IN SUPREME COURT

Milwaukee District Council 48,

     Plaintiff-Respondent,

  v.

Milwaukee County,

     Defendant-Appellant-Petitioner.

**FILED**

**MAR 19, 2019**

Sheila T. Reiff
Clerk of Supreme Court

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA GRASSL BRADLEY, J. Milwaukee County seeks to deny what it characterizes as "unusually generous" pension benefits to certain members of Milwaukee District Council 48 of the American Federation of State, County and Municipal Employees (DC-48), citing the County's structural deficit, the escalating cost of the Employees' Retirement System of the County of Milwaukee (ERS), and the County's intention to grant a particular benefit to only those represented employees who were hired before 1994. Known as the "Rule of 75," this benefit allows an eligible employee to receive a full pension when his age plus years of service total 75. After the Wisconsin

legislature enacted 2011 Wis. Act 10, which limited collective bargaining to base wages for municipal employees, the County resolved to codify existing Rule of 75 eligibility for non-represented employees. Instead, the County enacted an ordinance granting Rule of 75 benefits to all employees "not covered by the terms of a collective bargaining agreement" as long as those employees were hired before 2006. At the time of enactment, County employees who were represented by DC-48 were no longer covered by a collective bargaining agreement (CBA), the last of which expired in 2009. In order to avoid paying $6.8 million in benefits the County says it never intended to grant, the County urges the court to interpret "not covered by the terms of a collective bargaining agreement" to mean "not represented by a union." Because we must apply the plain meaning of the ordinance's text rather than rewrite it to reflect what the County may have intended, we reject the County's request and affirm the court of appeals.

## I. BACKGROUND

¶2 Milwaukee County has a history of negotiating CBAs with its employees, including DC-48 members. In 1991, the County created the Rule of 75, which it amended in 1993. The County's amended ordinance addressed Rule of 75 eligibility for employees "not covered by the terms" of a CBA. See Milwaukee Cty. Gen. Or. § 201.24(4.1) (1993). The amended ordinance reads:

2

> A member[1] who is not covered by the terms of a collective bargaining agreement at the time his employment is terminated and who retires on and after September 1, 1993, shall be eligible for a normal pension when the age of the member when added to his years of service equals 75[.]

Milwaukee Cty. Gen. Or. § 201.24(4.1) (1993). Under this iteration of the ordinance, the Rule of 75 applied to each employee "not covered by the terms of a collective bargaining agreement" if the employee's age added to years of service equaled 75, regardless of the hire date. Id.

¶3 In 1994, the CBA between the County and DC-48 extended the Rule of 75 benefit to DC-48 members, but only those hired by the County "prior to January 1, 1994." DC-48 members hired on or after January 1, 1994 were not eligible for the Rule of 75.

¶4 In 2005, the County amended Milwaukee County General Ordinance § 201.24(4.1) again, restricting its applicability within that category of employees not covered by a CBA to only those employees who were hired prior to January 1, 2006:

> A member who is not covered by the terms of a collective bargaining agreement at the time his employment is terminated and whose initial membership in the retirement system . . . began prior to January 1, 2006 who retires on and after September 1, 1993, shall be eligible for a normal pension when the age of the member when added to his years of service equals 75[.]

Milwaukee Cty. Gen. Or. § 201.24(4.1) (2006) (emphasis added). In other words, the County established a cutoff date for

_____

[1] "Member" means any member of the County's retirement system. All County employees become members of the retirement system when hired.

3

application of the Rule of 75 to employees not covered by the terms of a CBA: employees within that category would be eligible for the Rule of 75 benefit only if they were hired before January 1, 2006.

¶5 In 2008, with the current CBA set to expire on December 31, 2008 the County started negotiating a new CBA with DC-48. The County and DC-48 agreed to extend the CBA for another three months. Although a tentative successor agreement was reached, the County Board never approved it and DC-48's members never ratified it. DC-48's CBA expired on March 31, 2009, and no subsequent CBA was ever consummated.

¶6 Effective June 2011, the legislature enacted 2011 Wis. Act 10, which limited collective bargaining for "general municipal employees" to base wages.[2] See 2011 Wis. Act 10; see also Wis. Stat. § 111.70(1)(a) (2011-12).[3] As a result of other changes made by Act 10, DC-48's certification as a representative of County general employees was eventually revoked in January 2012.

¶7 After the enactment of Act 10, the County again amended Milwaukee County General Ordinance § 201.24(4.1) to codify Rule of 75 eligibility for employees covered by the terms of a CBA on September 29, 2011 and to add the demarcating date

_____

[2] It is undisputed DC-48 members are general municipal employees.

[3] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

4

of September 29, 2011 for that category of employees not covered

by a CBA. The relevant parts of the ordinance provide:

> (a) A member who, on September 29, 2011, is employed and is <u>not covered</u> by the terms of a collective bargaining agreement, and whose initial membership in the retirement system . . . began prior to January 1, 2006 . . . shall be eligible for a normal pension when the age of the member when added to his years of service equals seventy-five (75)[.]

> (b) A member who, on September 29, 2011, is employed and <u>is covered</u> by the terms of a collective bargaining agreement with . . . <u>District Council 48</u>, or with the Technicians, Engineers and Architects of Milwaukee County, or with the International Association of Machinists and Aerospace Workers, <u>and whose initial membership date is prior to January 1, 1994</u>, shall be eligible for a normal pension when the age of the member when added to his years of service equals seventy-five (75)[.]

Milwaukee Cty. Gen. Or. § 201.24(4.1)(2)(a)-(b) (2011)[4] (emphasis

added).[5] The amendment applied the Rule of 75 to employees "<u>not</u>

<u>covered</u> by the terms of a collective bargaining agreement" on

September 29, 2011 <u>and</u> hired "prior to January 1, 2006." <u>Id.</u>

(emphasis added). For an employee who, on September 29, <u>was</u>

"<u>covered</u> by the terms of a collective bargaining agreement" with

DC-48 or one of the other enumerated unions, the Rule of 75

---

[4] All subsequent references to this ordinance are to the 2011 version unless otherwise indicated.

[5] Paragraphs (2)(c) through (2)(g) in the ordinance address employees "covered by the terms of a collective bargaining agreement" with other unions. The interpretation of these paragraphs was not raised by the parties and therefore is not before us. See Milwaukee Cty. Gen. Or. § 201.24(4.1)(2)(c)-(2)(g)(2011).

5

applied only if the employee was hired "prior to January 1, 1994." Id. (emphasis added). This disparate treatment of "covered" and "not covered" employees under the ordinance gives rise to the dispute before us. Employees not covered by the terms of a CBA have a much later cutoff date-of-hire to be eligible for application of the Rule of 75, thereby expanding the pool of employees within that category who are eligible for the Rule of 75 benefit.

¶8 After DC-48's decertification, it sought a declaratory judgment that its members were not covered by the terms of a CBA, and therefore all members hired prior to January 1, 2006 (as opposed to January 1, 1994) were eligible for the Rule of 75. Both parties moved for summary judgment. The County argued that employees represented by DC-48 on September 29, 2011 were not entitled to the Rule of 75 unless they were hired prior to January 1, 1994. The County asserted these employees were in fact represented by DC-48 and covered by the terms of a CBA despite the last CBA expiring in 2009. DC-48 argued that, as of the September 29, 2011 trigger date, its members were not covered by the terms of a CBA, and were therefore entitled to the Rule of 75 as long as they were employed prior to January 1, 2006.

¶9 The circuit court granted DC-48's motion and denied the County's.[6] It reasoned the last CBA between DC-48 and the County expired in 2009; therefore, DC-48 members were not

---

[6] The Honorable Stephanie G. Rothstein presiding.

6

covered by the terms of a collective bargaining agreement on September 29, 2011. The court of appeals affirmed. Milwaukee Dist. Council 48 v. Milwaukee Cty., 2017 WI App 82, ¶1, 379 Wis. 2d 322, 905 N.W.2d 140. The County filed a petition for review, which we granted.

## II. DISCUSSION

¶10 Although the legislative changes made by Act 10 and the County's multiple amendments to its ordinance form the backdrop for this dispute, the central issue is quite simple: under Milwaukee County General Ordinance § 201.24(4.1)(2), were DC-48 members "covered by the terms of a collective bargaining agreement" on September 29, 2011? If so, only DC-48 members hired prior to January 1, 1994 would be eligible for the Rule of 75. This would leave DC-48 members hired between January 1, 1994 and January 1, 2006 ineligible for the benefit. However, if DC-48 members were not covered by the terms of a CBA on September 29, 2011, then the members hired between January 1, 1994 and January 1, 2006 would be entitled to the Rule of 75 benefit.

### A. Standard of Review

¶11 This issue involves the interpretation of an ordinance, which is a question of law we review de novo. Schwegel v. Milwaukee Cty., 2015 WI 12, ¶18, 360 Wis. 2d 654, 859 N.W.2d 78. In interpreting municipal ordinances, we apply the same principles used in statutory interpretation. Stoker v. Milwaukee Cty., 2014 WI 130, ¶17, 359 Wis. 2d 347, 857 N.W.2d 102. "[S]tatutory interpretation 'begins with the

7

language of the statute.'" <u>State ex rel. Kalal v. Circuit Court</u> <u>for Dane Cty.</u>, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). If the meaning of the language is plain, our inquiry ordinarily ends. <u>Id.</u> We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." <u>Id.</u> Context and structure are also important to meaning. <u>Id.</u>, ¶46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." <u>Id.</u> If this inquiry "yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." <u>Id.</u> (quoted source omitted). If the language is unambiguous, then we need not "consult extrinsic sources of interpretation, such as legislative history." <u>Id.</u>

### B. Analysis

¶12 The County argues DC-48 employees were in fact covered by the terms of the expired CBA on September 29, 2011. This argument stems from Wis. Stat. § 111.70's duty to collectively bargain in good faith, which includes the duty to maintain the contractual status quo during contract negotiations, even if the previous CBA expired. The County acknowledges that Act 10 reduced the scope of collective bargaining, but nevertheless insists that its duty to maintain the previous wage rates under

8

the expired CBA did not end until DC-48's decertification in 2012——after September 29, 2011. As a result, the County contends DC-48 members were "covered by the terms" of the expired CBA. We disagree.

¶13 Setting aside the duty to bargain in good faith, the County's ordinance, specifically its use of the phrase "covered by the terms" of a CBA, is plain. The ordinance creates two classes of employees: (1) those "covered by the terms" of a CBA with one of the enumerated unions and (2) those "not covered by the terms" of a CBA. See Milwaukee Cty. Gen. Or. § 201.24(4.1)(2)(a)-(b). Regardless of what the County intended, the plain meaning of "covered by the terms" of a CBA includes only those employees bound by a valid CBA. It is difficult to imagine how an employee could be "covered by the terms" of an expired CBA that no longer binds its parties. If a CBA has expired, then, absent some other consideration, its terms no longer cover the parties.

¶14 The County's invocation of the duty to bargain in good faith and maintain the status quo does not alter our interpretation of the plain text of the ordinance. As part of the duty to "bargain collectively," federal law provides that employers have an obligation to "meet . . . and confer in good faith with respect to wages, hours, and other terms and conditions of employment." NLRB v. Katz, 369 U.S. 736, 742-43 (1962) (citation and quotation marks omitted). In Katz, the Supreme Court held a refusal to negotiate over mandatory subjects of collective bargaining violated the statutory duty to

9

negotiate in good faith. Id. Accordingly, "an employer's unilateral change in conditions of employment under negotiation . . . is a circumvention of the duty to negotiate which frustrates the objectives" of the National Labor Relations Act. Id. Given a similar statutory obligation to negotiate in good faith, see Wis. Stat. § 111.70(1)(a), (3)(a),[7] our courts adopted Katz's reasoning. See St. Croix Falls Sch. Dist. v. WERC, 186 Wis. 2d 671, 677-80, 522 N.W.2d 507 (Ct. App. 1994) (citing Katz and explaining that "[w]hile status quo recognizes that changes can occur during a contract hiatus if such changes would otherwise have been permitted under the expired contract, it does not permit an employer to make unilateral changes in areas that are otherwise mandatory subjects for the collective bargaining table"); Jefferson Cty. v. WERC, 187 Wis. 2d 647, 654, 523 N.W.2d 172 (Ct. App. 1994) (explaining the "well-established rule that an employer has a duty to maintain the status quo with respect to wages, hours and conditions of employment during contract negotiations, and that an employer's 'unilateral change' in employment conditions or wages breaches

---

[7] Paragraph (1)(a) defines "collective bargaining" in part as "the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representative of its municipal employees in a collective bargaining unit, to meet and confer at reasonable times, in good faith, with the intention of reaching an agreement . . . with respect to wages for general municipal employees." Wis. Stat. § 111.70(1)(a). Subdivision (3)(a)4 prohibits municipalities from refusing "to bargain collectively." § 111.70(3)(a)4.

10

the duty to bargain collectively" (quoting Katz, 369 U.S. at 742-46; emphasis added)).

¶15 Wisconsin Stat. § 111.70 requires municipal employers "to meet and confer at reasonable times, in good faith, with the intention of reaching an agreement . . . with respect to wages for general municipal employees," and the statute provides "[i]t is a prohibited practice for a municipal employer . . . [t]o refuse to bargain collectively." Wis. Stat. § 111.70(1)(a), (3)(a)4. An employer violates this duty to bargain collectively if it makes any unilateral changes; the employer must maintain the status quo with respect to those terms subject to mandatory collective bargaining. Since enactment of Act 10, the only mandatory subject of collective bargaining for general municipal employees is base wages. Accordingly, the County was obligated to maintain base wages at the same rate specified in the expired CBA.[8]

¶16 The obligation to maintain the status quo does not, however, support the County's argument. The status quo obligation arises statutorily, as recognized in our case law; it does not arise from the expired CBA. See Wis. Stat. § 111.70(1)(a), (3)(a); St. Croix Falls Sch. Dist., 186 Wis. 2d at 677-80. The parties agree the last CBA expired in March 2009, and no successor agreement was reached. Because no contractual obligations existed on September 29, 2011, the

_____

[8] Wisconsin Stat. § 111.70 also limits any increase in base wages to the increase in the consumer price index.

11

members of DC-48 were not "covered by the terms" of a CBA on that date. The CBA did not give rise to any obligation to maintain base wages; rather, only § 111.70 did. The dissent sidesteps this distinction and confuses the County's <u>statutory</u> <u>obligation</u> to maintain the status quo during contract negotiations, with contractual obligations that no longer existed after the CBA expired, insisting that these statutory obligations mean that "terms of DC-48's expired CBA with Milwaukee County remained in effect." Dissent, ¶49. The dissent neglects to explain how a statute is capable of resuscitating a defunct contract. Expiration of the CBA means none of its terms survive and even importing the County's statutory status quo obligation into the Rule of 75 ordinance, as the dissent does, would not resurrect them.[9]

¶17 The dissent complains that our reading of the ordinance results in meaningless surplusage. Dissent, ¶¶31, 49. This concern is misplaced. The canon against surplusage guides us to read legislative language "<u>where possible</u> to give

---

[9] Peculiarly, the dissent accuses the court of failing to consider "how collective bargaining works," referring to the County's status quo obligations. Dissent, ¶49. We do not overlook "how collective bargaining works" but with some detail reject the dissent's proffered construction of the ordinance because it improperly reaches beyond the ordinance's text, and necessarily injects an assessment of the efficacy of the County's legislative choices, which we decline to do. By relying solely on collective bargaining law rather than the actual text of the ordinance, the dissent's construction improperly "travel[s] . . . beyond the borders of the statute." <u>United States v. Great N. Ry.</u>, 287 U.S. 144, 154 (1932).

12

reasonable effect to every word, in order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶46 (emphasis added); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012) ("Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant.").[10] Under our interpretation, both paragraphs (2)(a) and (2)(b) operate on different categories of employees and perform different functions. See Milwaukee Cty. Gen. Or. § 201.24(4.1)(2)(a)-(b). Paragraph (2)(a) provides an eligibility date of January 1, 2006

---

[10] Even if a plain meaning interpretation creates surplusage, sometimes legislatures do create surplusage and redundancies of language, and therefore the canon against surplusage is not absolute. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176-77 (2012); State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." (emphasis added)); State v. Mason, 2018 WI App 57, ¶26, 384 Wis. 2d 111, 918 N.W.2d 78 (explaining that "[t]he directive that we endeavor to give meaning to all parts of statutes so as to avoid surplusage is not a directive that we give different terms different meanings, regardless where that leads" and "the 'preference for avoiding surplusage constructions is not absolute'" (quoted source omitted; emphasis omitted)); see also Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (explaining that canons of construction, like the canon against surplusage, "are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others," the canon "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there"). The dissent's supposition that the use of "covered by the terms of" means something different than "covered by a" CBA in fact leads nowhere, as the dissent fails to identify any textual difference in meaning between the two phrases.

13

for employees not covered by the terms of a CBA. Id. Paragraph (2)(b), on the other hand, provides an earlier eligibility date of January 1, 1994 for employees covered by the terms of a CBA with DC-48 or other specified unions. Id. Neither paragraph is left without a textual function and every word is given meaning.

¶18 Even if no employees were in fact covered by the terms of a CBA with DC-48 (due to the expiration of the previous CBA), this extrinsic fact is immaterial to ascertaining the ordinance's plain meaning. The concept of surplusage is intrinsic to the text of the ordinance; attempting to avoid surplusage is a tool employed as part of our textual analysis. While we endeavor to give effect to every word, we do not reach beyond the statutory text itself to consider the practical, political, or policy implications of the law, nor do we weigh the extrinsic ramifications of our construction, such as the "cost to taxpayers" noted by the dissent. Dissent, ¶41 n.6. Instead, we confine our analysis of unambiguous laws to their text. See Kalal, 271 Wis. 2d 633, ¶¶46, 50 (explaining that "Wisconsin courts ordinarily do not consult extrinsic sources of statutory interpretation unless the language of the statute is ambiguous," and extrinsic sources are "interpretive resources outside the statutory text"). It would be improper to consider extrinsic evidence of whether the ordinance accomplished the County's goals. It does not matter if the County created a category no employees filled when the County passed the ordinance; each paragraph of Milwaukee County General Ordinance § 201.24(4.1) bears a textual function. Accordingly, there is

14

no surplusage problem. Any apprehension about the existence of a category into which no employee may fit necessarily concerns the wisdom of the County's choice of language. Such second-guessing of the prudence of the County's ordinance would reach beyond the proper judicial role, which is limited to interpreting and applying the clear text.

¶19 The canon against surplusage usually applies only if there are two ways to read a text. See Scalia, supra ¶17, at 176 (explaining that the canon typically applies when a statutory provision is susceptible to two different interpretations, one of which will result in surplusage while the other does not); see also Bourne Valley Court Tr. v. Wells Fargo Bank, NA, 832 F.3d 1154, 1164 (9th Cir. 2016) (Wallace, J., dissenting) (explaining that "courts should not apply the canon without first deciding that there are at least two potential readings of the statute (one that renders parts superfluous and one that does not)"). The meaning of the phrase "covered by the terms" of a CBA is plain, and it is not susceptible to the County's (or the dissent's) desired construction.

¶20 Disregarding the actual text of the ordinance, the County proffers an alternative definition of "covered by the terms" of a CBA. It claims that "covered by the terms" of a CBA was merely a "commonly understood method of categorization" meant to distinguish union employees (including those with expired CBAs) from those who had never worked under a CBA. Citing Local 321, Int'l Ass'n of Fire Fighters v. City of

15

Racine, 2013 WI App 149, 352 Wis. 2d 163, 841 N.W.2d 830, the County argues an employee is "covered by the terms" of a CBA "whenever a CBA has been approved and the employee falls within the category of to whom the CBA pertains." In other words, the County wants "covered by the terms" of a CBA to mean any employee represented by a union who was at one point subject to a CBA.

¶21 In support of this construction, the County points to the whereas clauses of the 2011 amendments to Milwaukee County General Ordinance § 201.24(4.1)(2). One of these clauses expressed the County Board's "wish[]" to "codify in the ordinances pension provisions previously found in such collective bargaining agreements units for" general municipal employees "related to the pension multiplier, the normal retirement age and the Rule of 75[.]" Based on the County Board's "wishes," the County insists that it could not have meant to expand eligibility for the Rule of 75 to DC-48 employees hired after January 1, 1994 because the expired CBA did not do so. The language the County enacted, however, says otherwise, and it is the enacted language the court must apply. "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Scalia, supra ¶17, at 56; see also Kalal, 271 Wis. 2d 633, ¶¶44-46 (explaining that we begin statutory analysis "with the language of the statute" read "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and

16

reasonably, to avoid absurd or unreasonable results," and if this analysis yields a plain meaning, we end our inquiry). Although whereas clauses and statutory preambles may be useful in resolving ambiguities, such language "cannot enlarge [a statute's] scope and operation." See Smith v. City of Brookfield, 272 Wis. 1, 3-5, 74 N.W.2d 770 (1956); see also Scalia, supra ¶17, at 218 (explaining that while language appearing in a statutory prologue may be "considered in determining which of various permissible meanings the dispositive text bears," prefatory statements of legislative intention "cannot give words and phrases of the dispositive text itself a meaning that they cannot bear"). "It is the law that governs, not the intent of the lawgiver," and "[m]en may intend what they will; but it is only the laws that they enact which bind us." Kalal, 271 Wis 2d 633, ¶52 (quoting Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 17 (1997) (emphasis omitted)). "[I]t is the text's meaning, and not the content of anyone's expectations or intentions, that binds us as law." Lawrence H. Tribe, Comment, in Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 66 (1997); see also Kalal, 271 Wis. 2d 633, ¶¶44-46, 52.

¶22 The dissent similarly strays from the text of the ordinance while assigning unwarranted import to the phrase "the terms of" in isolation from the full phrase: "covered by the terms of a collective bargaining agreement." The dissent admonishes that our reading of Milwaukee County General Ordinance § 201.24(4.1)(2) renders the phrase "'by the terms

17

of' . . . functionally useless within subsection (4.1)(2)." Dissent, ¶38. The dissent accuses us of conflating the phrase "covered by the terms of a collective bargaining agreement" with the phrase "covered by a collective bargaining agreement," insisting there must be a difference between the two. Dissent, ¶42.

¶23 Specifically, the dissent cites Milwaukee County General Ordinance § 201.24(3.11)(1)(a), (1)(e), and (1)(f) (2018) as other instances of the County's use of both "covered by the terms of" a CBA and "covered by" a CBA. Dissent, ¶¶45-47. The dissent insists "[t]he Board of Supervisors' choice to use differing language in neighboring sections of the County Employee Retirement System ordinances should be respected," and the use of these phrases in paragraph (1)(a) in particular "is a distinction with a difference." Dissent, ¶45. Much like its analysis of § 201.24(4.1)(2), however, the dissent offers nothing more than a bare conclusion that the phrases must mean something different. Dissent, ¶45. The dissent cites two other ordinance sections using the phrase "covered by a collective bargaining agreement," but its analysis of these provisions is similarly conclusory. Dissent, ¶48. The dissent's inability to identify any operative difference between being "covered by" a CBA and being "covered by the terms" of a CBA lends credence to the likelihood that the use or omission of "the terms of" is nothing more than a "stylistic mannerism." See Scalia, supra ¶17, at 177.

¶24 By insisting that "covered by the terms" of a CBA is different than "covered by" a CBA without identifying a textual basis for the distinction, the dissent disregards the reality that "[s]ometimes drafters do repeat themselves and do include words that add nothing of substance[.]" Scalia, supra ¶17, at 176; see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 299 n.1 (2006) ("While it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown."); United States v. Bronstein, 849 F.3d 1101, 1110 (D.C. Cir. 2017) (declining to apply the canon against surplusage, and observing that at times "drafters do repeat themselves and do include words that add nothing of substance" (quoting Scalia, supra ¶17, at 176); Kalal, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." (emphasis added)); State v. Mason, 2018 WI App 57, ¶26, 384 Wis. 2d 111, 918 N.W.2d 78 ("[S]ometimes the most reasonable reading of a statute, one that gives it the legislatively intended effect, is one that renders some language in the statute surplusage.").

¶25 "Though one might wish it were otherwise, drafters . . . often (out of a misplaced pursuit of stylistic elegance) use different words to denote the same concept." Scalia, supra ¶17, at 170; see also Freeman v. Quicken Loans, Inc., 566 U.S. 624, 635 (2012) (interpreting "portion," "split," and "percentage" to "mean the same thing" explaining this is "a perhaps regrettable but not uncommon sort of lawyerly iteration"

19

to include redundant terms, and "the canon against surplusage merely favors that interpretation which avoids surplusage" (emphasis omitted)); Doe v. Boland, 698 F.3d 877, 881-82 (6th Cir. 2012) (explaining "the presumption against surplusage does not apply to doublets——two ways of saying the same thing that reinforce its meaning" and noting "[t]he U.S. Code is replete with meaning-reinforcing redundancies").[11] We should be wary, however, of "creat[ing] unforeseen meanings or legal effects from" what is nothing more than a "stylistic mannerism." Scalia, supra ¶17, at 177; see also Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (explaining that the canon against surplusage must yield to the "cardinal" canon "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

---

[11] Surely the dissent, in endeavoring to find outcome-determinative meaning in each and every word, would not ascribe interpretive significance to the "doublets and triplets" prevalent in legal writings of every kind, such as "[e]xecute and perform——what satisfies one but not the other? Rest, residue and remainder——could a judge interpret these as referring to three distinct things? Peace and quiet——when is peace not quiet?" See Scalia, supra ¶17, n.10, at 177. As yet another example of how slight variations in the expression of a term often bear no substantive meaning, "[b]efore the 2007 revisions, the Federal Rules of Civil Procedure contained varying requirements for cause, for good cause, for cause shown, and for good cause shown. There was no reason to believe that, after removal of the attendant modifiers, the cause did not have to be good or did not have to be shown." Scalia, supra ¶17, n.10, at 177. So too here; there is no reason to assign a different meaning to "covered by the terms of a collective bargaining agreement" than "covered by a collective bargaining agreement" and the dissent identifies no textual basis for doing so, despite its repeated invocations of plain meaning.

Additionally, the dissent offers no elaboration on how our interpretation leaves "by the terms" functionally useless. Our interpretation gives the phrase "covered by the terms" of a CBA its plain meaning; it means that the terms of the CBA——not statutory obligations——must cover the employees at issue.

¶26 Although the dissent would adopt it, we are unpersuaded by the County's largely unsupported assertion that there existed some "commonly understood" definition of "covered by the terms" of a CBA that included employees who were not in fact covered by the terms of a CBA. An employee is not "covered by the terms" of a CBA merely by virtue of being represented by a union. If the County had intended such a categorization, it could have easily written the ordinance to accomplish this, as the court of appeals noted. See Milwaukee Dist. Council 48, 379 Wis. 2d 322, ¶23 ("If the County intended by the ordinance to exclude general county employees whose CBAs expired before the effective date, the County could have said so."). The County Board's generally expressed "wishes" to codify existing CBAs does not change our analysis. Although whereas clauses may be useful in ascertaining meaning in the face of an ambiguous ordinance, they are not part of the ordinance and may not override the unambiguous language of the ordinance itself. See City of Brookfield, 272 Wis. at 3-5 (addressing a whereas clause in a zoning ordinance and explaining "the preamble of a statute cannot enlarge its scope and operation, but it may be considered in determining the intent of the act." (citation omitted)); State ex rel. Columbia Corp. v. Town Bd. of Pac., 92

Wis. 2d 767, 779-780 & n.10, 286 N.W.2d 130 (Ct. App. 1979) (explaining that a statutory preamble is not part of the enactment and is "merely 'instructive of legislative intent'"(quoted source omitted)); see also District of Columbia v. Heller, 554 U.S. 570, 577-78 & n.3 (2008) (explaining that "in America 'the settled principle of law is that the preamble cannot control the enacting part of the statute in cases where the enacting part is expressed in clear, unambiguous terms,'" but prefatory language may help to clarify an ambiguity (quoted source omitted)).

¶27 In this case, we are not called upon to construe an ambiguous ordinance; the ordinance is quite clear so we need not consult extrinsic sources. "We assume that the legislature's intent is expressed in the statutory language." Kalal, 271 Wis. 2d 633, ¶44. Any indicia of the County's subjective purpose in enacting the ordinance beyond what is expressed in the text of the ordinance itself are irrelevant because the meaning of the enacted text is plain. See id., ¶46.

¶28 The County takes Local 321 out of context in an attempt to support its proffered "commonly understood" definition of "covered by the terms" of a CBA; the case does not support the County's construction. In Local 321, the City of Racine and the union signed two successive CBAs, and the second CBA——although signed and legally binding——was not yet in effect. Local 321, 352 Wis. 2d 163, ¶¶1, 3. The City argued the second CBA did not "cover" certain employees because it was not currently in effect. Id., ¶14. The court of appeals rejected

22

this argument because under "ordinary principles of contract law . . . the fact that a contract contemplates that performance will not begin until some date in the future does not change the fact that the contract exists and is an enforceable, legally protected relationship." Id. The court of appeals correctly recognized that the plain meaning of "covered by" a CBA meant "an employee is 'covered by' a CBA whenever a CBA has been approved and the employee falls within the category of to whom the CBA pertains." Id., ¶12. The County takes this statement out of context to mean that an expired CBA still covers the member who originally agreed to it. In doing so, the County disregards the distinction between the legally binding CBA governing the affected employees in Local 321 and the inoperative CBA in this case. Logically, DC-48 employees cannot be covered by the terms of the expired CBA because it is a legal nullity. Accepting the County's argument would lead to the absurdity of sustaining an expired contract in perpetuity.

¶29 Finally, other portions of Milwaukee County General Ordinance § 201.24(4.1) rebut the County's position that "covered by the terms" of a CBA really means "represented by a union." The ordinance uses each of these phrases to identify different groups of employees. Compare Milwaukee Cty. Gen. Or. § 201.24(4.1)(2)(a)-(b) (using "covered by the terms" of a CBA) with § 201.24(4.1)(2)(f)-(g) (applying to employees "covered by the terms" of a CBA but "not represented by" particular unions

23

(emphasis added)).[12]  Logically, the County could not have meant "represented by a union" when it wrote "covered by the terms" of a CBA because in paragraph (2)(f) it created a category of members who were both "covered by the terms of a collective bargaining agreement with the Milwaukee Deputy Sheriffs Association" and "not represented by the Milwaukee Deputy Sheriffs Association," and in paragraph (2)(g) it created a category of members who were both "covered by the terms of a collective bargaining agreement with the Milwaukee County Firefighters Association (IAFF Local 172)" and "not represented by the Milwaukee County Firefighters Association (IAFF Local 172)."  "When the legislature uses different terms in a statute——particularly in the same section——we presume it intended the terms to have distinct meanings."  Johnson v. City of Edgerton, 207 Wis. 2d 343, 351, 558 N.W.2d 653 (Ct. App. 1996); see also Armes v. Kenosha Cty., 81 Wis. 2d 309, 318, 260 N.W.2d 515 (1977) ("Where the legislature uses two different phrases, . . . in two paragraphs in the same section, it is presumed to have intended the two phrases to have different

---

[12] We are aware that the County added paragraphs (f) and (g) of Milwaukee County General Ordinance § 201.24(4.1)(2) after adopting the revisions at issue in this case.  Regardless of when the ordinance paragraphs were enacted, the use of both "covered by the terms of a collective bargaining agreement" and "represented by" a union indicates the phrases are not synonymous and cannot mean the same thing.  We interpret the language of the ordinance "not in isolation but as part of a whole" and "in relation to the language of surrounding or closely-related statutes."  Kalal, 271 Wis. 2d 633, ¶46.

24

meanings."). The County's argument works only if we understand "covered by the terms" of a CBA to identify the same group of people as those "represented by" a union. The use of both phrases in different portions of the same section of an ordinance belies this construction. The County demonstrated it knows the difference between the two phrases by using them in different ways. Indeed, the County created a class of members who were both covered by the terms of a CBA with a particular union but <u>not</u> represented by that union.

### III. CONCLUSION

¶30 The meaning of Milwaukee County General Ordinance § 201.24(4.1) is plain. Employees not covered by the terms of a CBA are entitled to the benefit of the Rule of 75 if they were hired prior to January 1, 2006. On September 29, 2011, the operative date in the County's amended ordinance, DC-48 members were not covered by the terms of a CBA because the last CBA had expired. Although the County may have been obligated to maintain base wages at the same rates expressed under the expired CBA, the obligation derives from statutes, not any contract. DC-48 members were not "covered by the terms" of the expired CBA, which lacks any legal force or validity. If the County intended a different allocation of benefits, it should have chosen different language. But with respect to County employees hired between 1994 and 2006, the plain text enacted by the County does not confine the application of the Rule of 75 to unrepresented employees and the court may not rewrite the ordinance to give effect to the County's purported intentions.

25

*By the Court.*——The decision of the court of appeals is affirmed.

¶31 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting).* I dissent from the majority opinion because it misconstrues Milwaukee County General Ordinances ("MCGO") §§ 201.24(4.1)(2) and 201.24(3.11)(1). It errantly dispenses with the choices set out in the ordinances that use two different phrases: (1) "covered <u>by the terms of</u> a collective bargaining agreement" and (2) "covered by a collective bargaining agreement." The opinion pays no heed to whether the phrases chosen by the Milwaukee County Board of Supervisors have distinct meanings. Rather, it conflates the terms despite their use in the context of this and also nearby, closely-related ordinance sections. The majority completely disregards this language and yet claims to engage in a plain meaning analysis that serves to render "by the terms of" mere surplusage. Instead of evaluating whether that language can be construed to have meaning, the majority injects its conclusion that the Board of Supervisors did not mean what it said, relying on the notion "that at times drafters . . . include words that add nothing of substance." Majority op., ¶24 (internal quotations omitted). Such an interpretation stands in opposition to basic rules of construction, which traditionally strive to give effect to each word of an ordinance when possible. Due to the majority's significant departure from a plain meaning analysis of § 201.24(4.1)(2), I respectfully dissent.

I

¶32 The most glaring error in the majority's interpretation of MCGO § 201.24(4.1)(2) lies in its failure to

1

evaluate whether the language "covered by the terms of a collective bargaining agreement," as used throughout the subsection, could indeed have meaning when compared with a previous section of the ordinance that does not use that phrase. The majority proclaims its intent to adhere to the plain text of the ordinance, and then ignores traditional tools of construction to conclude that "[b]ecause no contractual obligations existed on September 29, 2011," pursuant to an active collective bargaining agreement ("CBA"), "the members of DC-48 were not 'covered by the terms' of a CBA on that date." Majority op., ¶16. As will be explained below, such an interpretation belies the plain meaning of the ordinance.

A

¶33 It is well-established that the rules regarding the interpretation of state statutes apply equally when interpreting local ordinances. State v. Ozaukee Cty. Bd. of Adjustment, 152 Wis. 2d 552, 559, 449 N.W.2d 47 (Ct. App. 1989) (citing Hambleton v. Friedmann, 117 Wis. 2d 460, 462, 344 N.W.2d 212 (Ct. App. 1984)). I start then by addressing longstanding and fundamental principles of statutory interpretation that should guide our analysis.

¶34 In construing statutes, "[s]tatutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. However, "statutory language is

2

interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Id. "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." Id.

¶35 Additionally and importantly, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id. The majority correctly states that this rule is not absolute, as "[s]ometimes drafters do repeat themselves and do include words that add nothing of substance[.]" Majority op., ¶24 (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012)). However, this is the exception, not the rule, when interpreting statutes. Indeed, we have repeatedly stated that we should strive to not interpret statutes in a manner that renders any word or phrase unnecessarily superfluous. See, e.g., Metropolitan Assocs. v. City of Milwaukee, 2018 WI 4, ¶¶41-42, 379 Wis. 2d 141, 905 N.W.2d 784 (interpreting Wis. Stat. § 70.32(1) so as to give effect to the word "practicably," leading to a conclusion that mass appraisal techniques are authorized by statute); Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶151, 358 Wis. 2d 1, 851 N.W.2d 337 (construing Milwaukee Charter Ordinance § 36-13-2-d as distinguishing between

3

contributions made by the City of Milwaukee and contractually protected benefits of plan members such that "contributions" could not be considered a "benefit" because such an interpretation gave effect to each word of the ordinance and avoided surplusage); Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶55, 350 Wis. 2d 554, 835 N.W.2d 160 (reading Wis. Stat. § 893.80(3) to give effect to the phrase "the amount recoverable by any person" in the interest of avoiding rendering part of the statute surplusage, and thus concluding that an order for abatement is not covered by § 893.80(3) because abatement does not entitle "any person" to "recover" any amount); see also Scalia & Garner, supra ¶35, at 176 ("Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant.").

¶36 Moreover, when considering statutes, "[i]t is presumed that the legislature acted with full knowledge of the existing law, both the statute[s] and the court decision[s] interpreting it." Kindy v. Hayes, 44 Wis. 2d 301, 314, 171 N.W.2d 324 (1969); see also Blazekovic v. City of Milwaukee, 225 Wis. 2d 837, 845, 593 N.W.2d 809 (Ct. App. 1999) (stating that an analysis of statutes "begins with the presumption that the legislature knew the case law in existence" when it enacted the statutes); Carol J.R. v. Cty. of Milwaukee, 196 Wis. 2d 882, 888, 540 N.W.2d 233 (Ct. App. 1995). As we interpret state statutes and local ordinances the same way, there is no reason to disrupt that presumption here.

4

B

¶37 My analysis is driven by the plain meaning of the language in the ordinances at issue. Specifically, certain parts of the ordinances use the phrase "covered by the terms of a collective bargaining agreement" and other parts use the phrase "covered by a collective bargaining agreement." Instead of ascertaining why this choice might have been made, the majority quickly surmises that the language has no meaning and was gratuitously added.

¶38 The majority starts its analysis at the finish line, reading MCGO § 201.24(4.1)(2) in a manner that ascribes no meaning to the phrase "by the terms of," thus rendering the phrase functionally useless within subsection (4.1)(2). It concludes that, "[r]egardless of what the County intended, the plain meaning of 'covered by the terms' of a CBA includes only those employees bound by a valid CBA," stating that it cannot "imagine how an employee could be 'covered by the terms' of an expired CBA that no longer binds its parties." Majority op., ¶13. But, as will be demonstrated, such an interpretation contradicts the plain text of the ordinance.[1] By utilizing the phrase "covered by the terms of," this section has broader reach, in that it results in fewer people being able to claim

---

[1] I note that Milwaukee County also raises significant concerns regarding what it phrases as the duty to "maintain the status quo about mandatory subjects of bargaining" and its effect on the Milwaukee County General Ordinances. As I focus on the plain meaning of MCGO § 201.24(4.1)(2) based upon the ordinance's text, I will not further address Milwaukee County's argument regarding the status quo obligation.

Rule of 75 benefits because even though they are not "covered by a collective bargaining agreement" then in existence, they may still be "covered by the terms of a collective bargaining agreement." If the drafters of the ordinance had intended to include all, rather than exclude some, a much simpler provision could have been drafted.

¶39 The at-issue ordinance determines eligibility for the "Rule of 75," which provides eligible Milwaukee County employees a full pension plan when an employee's age and years of service equals or exceeds 75. Milwaukee Cty. Gen. Or. § 201.24(4.1)(2)(a) creates Rule of 75 eligibility for any member who, on September 29, 2011, "is employed and is not covered by the terms of a collective bargaining agreement, and whose initial membership in the retirement system under section 201.24 began prior to January 1, 2006, and who retires on and after September 1, 1993."[2] MCGO § 201.24(4.1)(2)(a). Thus,

---

[2] Milwaukee Cty. Gen. Or. § 201.24(4.1)(2) creates seven groups of members who may be eligible for Rule of 75 pension benefits, but only subsections (4.1)(2)(a) and (4.1)(2)(b) are at issue here. The majority criticizes my purported failure to address or explain the effect of MCGO § 201.24(4.1)(2)(f)-(g). Subsections (4.1)(2)(f) and (4.1)(2)(g) did not appear in the Milwaukee County General Ordinances until July of 2016—approximately 20 months after this action was commenced. However, subsections (4.1)(2)(f) and (4.1)(2)(g) merely state that if an employee is covered by the terms of a CBA on September 29, 2011, and is no longer represented by either of the two enumerated unions at the date of retirement, the employee is eligible for a Rule of 75 pension. See § 201.24(4.1)(2)(f)-(g). The subsections seem to ensure that employees who fall within either subsection will have a pension despite no longer being represented by either of the two enumerated unions when they retire.

6

§ 201.24(4.1)(2)(a) creates eligibility for any employee who: (1) initially became a member of the retirement system before January 1, 2006; (2) retires on or after September 1, 1993; and (3) on September 29, 2011, was employed and was <u>not</u> covered by the terms of a CBA.[3]

¶40 Subsection (4.1)(2)(b) creates eligibility for any "member who, on September 29, 2011, is employed and is covered by the terms of a collective bargaining agreement" with a few unions, including Municipal Employe[e]s District Council 48, "and whose initial membership date is prior to January 1, 1994." MCGO § 201.24(4.1)(2)(b). Thus, under subsection (4.1)(2)(b), Rule of 75 benefits are afforded to any member of DC-48 or other enumerated union who: (1) initially became a member prior to January 1, 1994; and (2) on September 29, 2011, was employed and <u>was</u> covered by the terms of a CBA.[4]

¶41 The majority construes subsections (4.1)(2)(a) and (4.1)(2)(b) in a vacuum to surmise that it creates two groups of members: (1) those <u>covered by</u> an existing CBA with one of the

---

[3] The remainder of subsection (4.1)(2)(a) limits eligibility for certain employees, such as "any member eligible under section 4.5," which addresses "deferred vested retirement," for certain sheriffs or correctional officers. MCGO § 201.24(4.1)(2)(a). Such limitations are not relevant for our purposes here.

[4] Like subsection (4.1)(2)(a), subsection (4.1)(2)(b) states that it does not apply to "any member eligible under section 4.5." MCGO § 201.24(4.1)(2)(b).

7

enumerated unions[5]; and (2) those <u>not covered by</u> an existing CBA. Majority op. ¶13. The majority's construction is problematic, because it looks no further to determine why the phrase "by the terms of" was chosen when in the previous section it was not. Perhaps it is used because members could still be covered <u>by the terms of</u> a CBA no longer in effect. Since DC-48 members were not actually covered by an existing CBA on September 29, 2011, the majority creates, out of thin air, Rule of 75 eligibility for DC-48 members (along with members of other unions specified in subsection (4.1)(2)(b)) whose membership began after January 1, 1994, but before January 1, 2006. By not accounting for employees who might still be covered by the terms of an expired CBA, the majority's interpretation of subsections (4.1)(2)(a) and (4.1)(2)(b) results in Rule of 75 benefits being afforded to more DC-48 members than called for under the ordinance.[6]

¶42 The majority's construction of MCGO § 201.24(4.1)(2) goes no further to determine whether the different language might have meaning. Instead it conflates "covered by the terms

---

[5] Subsections (4.1)(2)(c) through (4.1)(2)(g) of the ordinance further define which members of specifically enumerated unions, who were covered by the terms of a CBA on a particular date, are eligible under the Rule of 75. <u>See</u> MCGO § 201.24(4.1)(2)(c)-(g).

[6] While the cost to taxpayers cannot drive statutory interpretation, the majority's misinterpretation is not a distinction without a difference. Indeed, the majority's errant construction of MCGO § 201.24(4.1)(2) would result in Milwaukee County taxpayers providing an additional $6.8 million in benefits.

of a collective bargaining agreement" with "covered by a collective bargaining agreement" and declares, without more, that the Board of Supervisors included words that added nothing of substance. See majority op., ¶24. In other words, the majority begins its analysis with an assumption that the legislative body did not mean what it said.

¶43 We most typically do not begin our analysis with an assumption that mandates one conclusion without further considering whether the words used might actually have meaning, especially in the context of a provision that was drafted in order to exclude certain people from Rule of 75 benefits. If the Rule of 75 was intended to apply to all, this provision would be unnecessary.

¶44 The majority dashes to interpret MCGO § 201.24(4.1)(2) by ignoring key language of the text itself and the fact that each phrase appears in surrounding provisions, for example, MCGO § 201.24(3.11). Under a proper understanding of the plain meaning of § 201.24(4.1)(2), since DC-48 members were covered by the terms of a CBA on September 29, 2011, they are eligible for Rule of 75 benefits only if they were employed on September 29, 2011, and initially became members prior to January 1, 1994. See MCGO § 201.24(4.1)(2)(b). This language has distinct meaning as is demonstrated by its use elsewhere.

¶45 As noted previously, statutory interpretation requires an evaluation of the context in which a statute appears, as statutes are viewed not in isolation, but as part of a whole. Kalal, 271 Wis. 2d 633, ¶46. Ordinance interpretation follows

9

the same rules. <u>Ozaukee Cty. Bd. of Adjustment</u>, 152 Wis. 2d at 559. We thus must consider MCGO § 201.24(4.1)(2) "in relation to the language of surrounding or closely-related [ordinances]." <u>Kalal</u>, 271 Wis. 2d 633, ¶46. The context surrounding § 201.24(4.1)(2) provides further support for my plain meaning interpretation. Crucially, in close proximity to the Rule of 75 ordinance, the Board of Supervisors directly distinguishes between "covered by the terms of a collective bargaining agreement" and "covered by a collective bargaining agreement" in a section dealing with mandatory employee contributions of funds to the retirement system. <u>See</u> MCGO § 201.24(3.11). Section 201.24(3.11)(1)(a) states, in pertinent part, "Each member of the employes' retirement system . . . who is not <u>covered by the terms of a collective bargaining agreement</u>, or who is <u>covered by a collective bargaining agreement</u> that has adopted this ordinance," § 201.24(3.11)(1)(a) (emphasis added), except those contributing under a different subsection must contribute a percentage of the member's compensation under § 201.24(3.11).[7] The Board of Supervisors' choice to use differing language in neighboring sections of the County Employee Retirement System ordinances should be respected. Specifically, the subsection (3.11)(1)(a) ordinance language "covered by the terms of a collective bargaining agreement" and "covered by a collective bargaining agreement" is a distinction with a difference. We

---

[7] Subsections (3.11)(1)(c) and (3.11)(1)(d) operate similarly to subsection (3.11)(1)(a). <u>See</u> MCGO § 201.24(3.11)(1)(c)-(d).

must presume that the Board of Supervisors' decision to use distinct language was purposeful. One of the two phrases would be completely unnecessary if the other has the exact same meaning, yet the two phrases coexist, in the disjunctive, and in the same sentence, hence leading to the observation that they must have different meanings. While the majority does not assign any import to the different terms used in any section, it ought to be concerned with whether these phrases were chosen because they indeed each have a distinct, proscribed meaning. If they were identical in meaning, subsection (3.11)(1)(a) would not list them as alternatives to each other.

¶46 Subsection (3.11)(1)(a) means to include only employee retirement system members who are "covered by a collective bargaining agreement that has adopted this ordinance," or who are "not covered by the terms of a collective bargaining agreement." This begs the question: When would one be subject "to the terms of" a CBA but not be covered by it? The answer to this question: members may still be covered by the terms of a CBA when the CBA has expired but the terms might continue to apply.

¶47 Subsections (3.11)(1)(e) and (3.11)(1)(f) similarly illustrate this linguistic distinction. Subsection (3.11)(1)(e) applies to any member "who is <u>covered by a collective bargaining agreement</u>." MCGO § 201.24(3.11)(1)(e) (emphasis added). Subsection (3.11)(1)(f) applies to any member "who is <u>covered by the terms of a collective bargaining agreement</u>." § 201.24(3.11)(1)(f) (emphasis added). Why again presume, as

11

the majority does, that the Board of Supervisors' choice to create these distinctions deserves no significance? There are indeed categories of employees who may be covered by the terms of a CBA but are not actually covered by a CBA.

¶48 Moreover, my interpretation of the plain meaning of MCGO § 201.24(4.1)(2) is further supported by a review of other parts of the ordinances, where the Board of Supervisors exclusively uses the phrase "covered by a collective bargaining agreement," without reference to "the terms of" any CBA. See § 201.24(2.18)(3)(a) (defining "[n]ormal retirement age" as 64 for a member (a) "who is not covered by a collective bargaining agreement" at the time his employment terminates; (b) who is "not an elected official" at the time his employment terminates; and (c) "whose initial membership in the retirement system began on or after January 1, 2010" (emphasis added)); MCGO § 203.2.6.f. (defining "[e]mploye" in part as "[t]hose employees who are members of a collective bargaining unit covered by a collective bargaining agreement which (as a result of good faith bargaining between the county and representatives of such unit) does not provide for their inclusion" (emphasis added)).

¶49 As a practical matter, the majority's interpretation of MCGO § 201.24(4.1)(2) is further flawed, as it renders the phrase "by the terms of" surplusage without consideration of how collective bargaining works. Given the status quo requirement——that even the parties agree has been and is controlling——key terms of the CBA must remain in effect until a successor CBA is negotiated and agreed to by the employer and the union. Might

12

that be a reason for using the phrase "by the terms of"? Yes. Simply stated, certain terms of a CBA may have significance even after a CBA has expired. It is undisputed that on September 29, 2011, DC-48 employees were not actually covered by an existing CBA, as the CBA expired in 2009 and no new CBA was executed. Despite that, Milwaukee County was still required to maintain the terms of DC-48's expired CBA regarding base wages. Thus, terms of DC-48's expired CBA with Milwaukee County remained in effect, and on September 29, 2011, DC-48 members were covered <u>by the terms of</u> a CBA despite the fact that the CBA was expired. The majority's reading of § 201.24(4.1)(2) fails to give any consideration to this basic principle to which the parties even agree.

¶50 Thus, these ordinances can indeed be interpreted to give meaning to this language and with reason, draw a distinction between members "covered by the terms of" a CBA and members "covered by" a CBA. The majority claims that my analysis "strays from the text of the ordinance while assigning unwarranted import to the phrase 'the terms of'" in the CBA. Majority op., ¶22. To the contrary, as I have shown, I <u>adhere</u> to the text of the ordinance, reading MCGO § 201.24(4.1)(2) completely and giving effect to each word in the ordinance.

¶51 In order for the majority's reading of MCGO § 201.24(4.1)(2) to pass muster, one must assume that the Board of Supervisors' choice to sometimes use different, distinct, and disjunctive provisions was haphazard and is entitled to no consideration whatsoever. The majority fails to even attempt to

13

reconcile how these choices might have meaning. Therein lies the Achilles heel in the majority's reasoning.

¶52 Due to the majority's significant misinterpretation of MCGO § 201.24(4.1)(2), I respectfully dissent from the majority opinion.

¶53 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this dissent.